UNITED STATES of America,
Plaintiff-Appellee,

v.

Aubrey EVANS, Defendant-Appellant.

No. 15055.

United States Court of Appeals
Sixth Circuit.

July 5, 1963.

Wilfred C. Rice, of Charity & Rice, Detroit, Mich., for appellant.

William H. Merrill, Chief Asst. U. S. Atty., Detroit, Mich. (Lawrence Gubow, U. S. Atty., Detroit, Mich., on the brief), for appellee.

Before CECIL, Chief Judge, and MILLER and O'SULLIVAN, Circuit Judges.

CECIL, Chief Judge.

Aubrey Evans, defendant-appellant, hereinafter called defendant, was indicted in the United States District Court for the Eastern District of Michigan, Southern Division, for the unlawful possession of a still used for the manufacture of intoxicating liquor in violation of Sections 5179(a) and 5601(a) (1), Title 26, U.S.C. The defendant was tried before a jury, found guilty and sentenced to eighteen months in the custody of the Attorney General. This appeal followed.

The defendant was arrested by federal officers on May 29, 1961, at the premises described as 1000 Baldwin street, in the city of Detroit. The officers had a search warrant for 1000 Baldwin street, Detroit, including the basement and attic.[1] One thousand Baldwin was the south half of a two and one-half story double or duplex house. The building was constructed as a two family unit, each side having a first and second floor with a basement and attic. The north side was described as 1004 Baldwin. There was a partition wall in the attic separating the two family units.

At the time of the arrest, the entrance to the attic on the 1004 side was sealed off with lath and plaster in a permanent manner. A door two and a half by five feet had been cut through the partition so that access to the attic over 1004 could only be gained through the entrance from 1000 Baldwin. The door was hinged and opened into the 1004 side of the attic. There was no lock or fastener on the door by which it could be fastened from either side. There were two nails above the door from which a cloth could be suspended to conceal the door.

The officers were admitted into 1000 Baldwin by the defendant. He was told that they had a search warrant and they proceeded to search the premises. The search led to the portion of the attic over 1004 where an illegal still was found.

One of the assignments of error is that the evidence concerning the discovery of this still should not have been admitted at the trial for the reason that the authority of the search warrant did not extend to the premises described as 1004

Baldwin. This question was first raised on a motion to dismiss the indictment.

The district judge found that the physical characteristics of this attic were such that the entire attic was a part of the premises described as 1000 Baldwin. We agree. The question presented here is a factual one and we are of the opinion that the trial judge decided it correctly. No cases have been cited to us directly in point and we have found none.[2]

Counsel for the defendant argues in his brief that there was a failure to show probable cause for the issuance of the search warrant. We cannot find that this question was raised in the trial court either on the motion to dismiss or at the trial. It cannot now be raised in this Court. Duignan v. United States, 274 U.S. 195, 200, 47 S.Ct. 566, 71 L.Ed. 996; Koury v. United States, 319 F.2d 75, C.A. 6, decided June 26, 1963.

In another assignment of error, counsel for defendant charges that the government failed to prove the possession of the illegal still by the defendant. The gravamen of this charge is that the only evidence to show possession in the defendant is a signed confession of the defendant which the trial judge erroneously admitted into evidence.

We are of the opinion that from all of the facts and circumstances surrounding the search and arrest there was sufficient evidence in addition to the confession to carry the case to the jury on the question of possession. However, the confession would be so damaging that if it was improperly admitted a reversal would be required.

---

1. The premises were described as follows (Motion to dismiss, Tr. p. 43): 1000 Baldwin Street, Detroit, Wayne County, Michigan, this being the southern portion of a duplex type dwelling house, the northern portion appearing vacant, and bearing the postal number 1004, both being a 2½ story red brick construction, trimmed with faded orange, having basement and attic, further described as being located on the east side of Baldwin Street, the northeast corner of the intersection of Baldwin and Lafayette Streets, Detroit, Michigan. The specific portion of the building to be searched is the southern portion of the building, bearing the postal number 1000, including the basement and attic portion thereof.

2. Keiningham v. United States, 109 U.S. App.D.C. 272, 287 F.2d 126, is somewhat similar but it can be distinguished on the facts. In this case there was an alternative entrance to the apartment alleged to have been illegally searched, other than through the premises for which the search warrant was issued.

The confession in question was taken by James Lucia, one of the federal officers assisting in making the search of the premises. Mr. Lucia was downstairs with the defendant at the time the still was found in the attic. Mr. Lucia testified that he advised the defendant that he need not say anything and that anything he did say could be used against him. The defendant then admitted that he owned the still that was found in the attic, that he had had it approximately three weeks and that he had produced two and one-half gallons of distilled spirits. Mr. Lucia reduced these statements to writing in his own hand and the written statement was signed by the defendant.[3] The defendant read it and was given an opportunity to make changes.

The defendant testified that the officers put the handcuffs on him and that one of the officers commenced writing. The statement was written and read to him and he was asked to sign it. The defendant further testified that the officer said: " 'I mean for you to sign it right now.' " The defendant then explained "So, rather than get into it with the officers, I went ahead and signed the statement, with the handcuffs on, and he held it on my knee for me to sign it."

At the time the statement or confession was offered in evidence, counsel for the defendant objected to its introduction on the ground that it was written down by the officer, that there was no indication that the defendant had read it and that it was rather a statement of the officer than the defendant. This in substance is the only objection made to its introduction into evidence. "The constitutional test for admission of an accused's confession in federal courts for a long time has been whether it was made 'freely, voluntarily, and without compulsion or inducement of any sort.' " United States v. Carignan, 342 U.S. 36, 41, 72 S.Ct. 97, 96 L.Ed. 48. A confession which has been reduced to writing, if voluntarily made, is admissible in evidence against an accused where it has been read over to or by him and signed or admitted to be correct. This is true even though it was reduced to writing by one other than the accused. McBryde v. United States, 7 F.2d 466, 467, C.A. 6.

Whether a confession is voluntary is a question of fact to be submitted to the jury. Carignan, supra; McBryde, supra; United States v. Hackett, 303 F.2d 33, 34, C.A. 6, cert. denied, 371 U.S. 819, 83 S.Ct. 35, 9 L.Ed.2d 60, rehearing denied, 371 U.S. 917, 83 S.Ct. 252, 9 L.Ed.2d 176. The trial judge gave adequate and correct instructions to the jury with reference to its consideration of the confession. We find no error by reason of the admission of the confession into evidence.

At the close of all of the evidence, counsel for the defendant made a motion to strike exhibit 8 (the confession) from the record for the reason that officer Lucia had made some alterations in the text of the statement. These alterations consisted of the deletion of the preposition "in," the addition of the article "the" and the correction of the spelling of the word "swear." The trial judge considered that the alterations were inconsequential and that the objection by motion came too late. We find no error in this respect.

The judgment of the District Court is affirmed.

3. "My name is Aubrey Evans, and I have operated the illicit distillery which was found by federal investigators in the attic of my home at 1000 Baldwin Street, Detroit. I had the still operating for about three weeks. I made about two and one-half gallons of distilled spirits so far. This was kept at my house. I had six barrels set up, and one copper still. I run the still by gas, and I paid the gas bills each month. I rent the complete house at 1000 Baldwin Street, and pay all the utility bills.

"I have read the following statement, and I have been given an opportunity to make necessary changes I see fit. I swear the statement is true, to the best of my knowledge." (Tr. p. 71.)