**Elroy Alfred SHORT, $5,256.30 in United States Currency, etc., Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 6329.

District of Columbia Court of Appeals.

Argued July 17, 1972.

Decided Feb. 6, 1973.

William A. Borders, Jr., Washington, D. C., for appellant.

Leo N. Gorman, Asst. Corp. Counsel, with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for appellee.

Before REILLY, Chief Judge, and KELLY and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge.

This is an appeal from a judgment in a libel information finding that the seized money ($5,256.30) had been used for illegal purposes and ordering the forfeiture and condemnation of the money pursuant to D. C.Code 1967, § 22–1505 (Supp. V, 1972).

The trial court heard evidence that the appellant had been under surveillance by the Vice Squad of the Metropolitan Police Department for his alleged connection and involvement with a suspected gambling operation. He had been observed on numerous occasions conversing with known gamblers who came to his Esso service station on Florida Avenue, and subsequent to those conversations had been seen leaving his service station and proceeding to 1025 H Street, N.E., the location of an apparel shop which he owned. The testimony further revealed that on several of these occasions the appellant was observed to have his overcoat pockets "bulging". A police officer followed him into the store on one such occasion and saw him go to the rear of the premises. He testified that when he emerged "his coat pockets were no longer bulging as they were when he entered." Upon the above information a search warrant was issued by the United States District Court on March 26, 1970, for the H Street address [1] and in the course of the

1. Another warrant was simultaneously issued for the Florida Avenue service station and, as a result of the search of those premises, the appellant was arrested and tried before the United States District Court. On April 28, 1972, the appellant was found guilty of operating and maintaining a gambling establishment at the Florida Avenue address. *See* Short v. United States, Crim. No. 1086–70.

search the money involved here was found and seized.

The issues raised on this appeal are:

(1) Whether the search warrant was sufficient to include the rear portion of the premises searched;

(2) Whether the trial court should have accepted or considered the opinion testimony of an officer that the three pieces of paper seized under the warrant, but later lost, were numbers slips and rundown tapes; and

(3) Whether there was sufficient evidence to justify a finding that the money seized was the product of an illegal activity.

■ First, as to the validity of the search, a search warrant had issued for 1025 H Street, N.E. which was an apparel shop. The back room of this shop, which is the room that was searched, was formerly known as 738 Eleventh Street, the entrance having previously been around the corner from 1025 H Street, N.E. However, the former entrance on Eleventh Street and the windows there had been bricked up and the building incorporated into the H Street address.[2] On the inside there were no visible signs of any separation of the two buildings except for a partial partition and a curtain. The only entrance to the entire premises was, as stated in the warrant, "1025 H Street, N.E." This issue presents a factual determination which was made by the trial court that the description in the warrant was sufficient. We agree.

The trial court properly distinguished the present situation from that involved in Keiningham v. United States, 109 U.S.App. D.C. 272, 287 F.2d 126 (1960), wherein it was held that the search of adjoining premises by entry through a freshly cut door pursuant to a search warrant for the premises from which entry was made was invalid primarily due to the fact that it should have been obvious to police that this was a separate premise and there were external entrances into the premises from the street. In our situation there were no visible signs of separation inside and no alternate entrance to the searched premises. On such facts, the trial court's determination that the warrant sufficiently described the searched premises was amply supported by the evidence.[3]

The appellant next raises a question as to the propriety of the trial court allowing the searching officer to testify regarding the fruits of the search other than the money seized. This officer testified that upon entering the back room of the apparel shop he observed clothing hanging on racks, hats and hatboxes, a desk and an adding machine. On top of the desk he found various papers which he described without producing them in court. One he described as being about four by six inches with number bets written on it,[4] the others seemed to relate to the business of the apparel shop.[5] He also noticed some tapes like adding machine tapes with numbers on them. The court permitted him to answer the question as to what in his opinion the numbers on the tapes could have meant as an expert witness in view of his five years' experience on vice and numbers investigations. Over the objection of the appellant, he testified that "[t]hey could have been rundown tapes from number bets." [6] He could not recall, however, whether the "numbers tapes" were found in the drawer with the money or in one of the other

2. Under such circumstances the fact that the owner had applied for and obtained two separate occupancy permits is of no great significance.

3. United States v. Evans, 320 F.2d 482 (6th Cir. 1963).

4. Tr. at 18.

5. It should be noted that there was no charge of maintaining or operating a gambling establishment at the H Street address, nor were there any arrests made there for such activities.

6. Tr. at 23.

drawers of the desk. He testified on cross-examination, in answer to a question as to what specific avenue of his experience led him to believe that the tapes with numbers on them were rundown tapes:

> In my experience I have seen numbers—rundown tape where they have certain columns have been added—a certain amount—after you know how it works, that are paid out. There are certain amounts that are total and then in many cases there are initials on those tapes that are codes.[7]

It developed on cross-examination that the four by six inch paper he had described on direct examination as having numbers bets written on it had been lost by the police shortly after it was seized and had not been found. Without objection being made his testimony continued as follows:

> Q Now, officer, this phantom piece of paper, could it have been anything else but alleged number bets?
>
> A In my own opinion it was number bets.
>
> Q Could it have been anything else, sir?
>
> A No, sir, I said there were number bets.
>
> \* \* \* \* \* \*
>
> Q How many bets were on that piece of paper?
>
> A There were approximately $30. I don't remember the exact number of columns but they were written in columns on the face of the paper.[8]

He also testified that he included the foregoing information in his report on the search and seizure that he later made at his police headquarters.

During redirect examination the following testimony was elicited by the court:

> THE COURT: What do you mean by number bets?
>
> THE WITNESS: Number bets in this sense, three numbers, a number of three digits. Then to the right is an amount, like say for example 444—one dollar, five dollars. [Tr. at 39.]

The appellant did not object to the use of parol testimony to describe the lost document that the police had seized from the top of the desk. In short, there was no objection to the officer's testimony that number bets were recorded on that four by six inch piece of paper. As indicated earlier, objection was made to the question that elicited the officer's conclusion[9] regarding the "rundown tapes".[10] Although the tapes and number bets slip had been lost and could not be produced for trial, the appellant had full opportunity to cross-examine the witness regarding their contents and format.

In summary, if we exclude the opinion testimony regarding the rundown tapes, there remains testimony about the number bets slip; also testimony that Mr. Short was seen making trips with bulging pockets from his gasoline station to the apparel shop after meeting with known numbers bet operators and that on one such occasion he was seen to enter the rear of the shop, where money in the sum of $5,256.30 was later found, and to emerge without his pockets bulging. The manager of the apparel shop, according to the officer, had no knowledge that any cash receipts from the store were kept in the rear room.[11]

■ Considering that evidence in the light most favorable to the government, we

---

7. Tr. at 38.

8. Tr. at 29.

9. *See* Wigmore on Evidence § 1922 (3d ed. 1940); *cf.* Gilbert v. Gulf Oil Corp., 175 F.2d 705 (4th Cir. 1949).

10. Tr. at 23.

11. The apparel shop manager was not called as a witness.

find it is sufficient to support the judgment of the trial court.

In view of the sufficiency of the evidence adduced at trial, as hereinbefore set forth, we do not find it necessary to resolve the issue as to whether or not the trial court's ruling permitting the officer to give his conclusion regarding the rundown tapes constituted reversible error.

Affirmed.