**Ronen Jack AMIR, Appellant,**

v.

**The STATE of Texas.**

No. 951–00.

Court of Criminal Appeals of Texas, En Banc.

May 16, 2001.

Brian W. Wice, Houston, for appellant.

S. Elaine Roch, Assist. DA, Houston, Matthew Paul, State's Atty., Austin, for the State.

## OPINION

JOHNSON, J., delivered the opinion for a unanimous Court.

Appellant was charged by indictment with possession of a controlled substance, cocaine. After his motion to suppress the cocaine seized at his residence during a search under warrant was denied by the trial court, he pled guilty in accordance with an agreed recommendation as to punishment. The trial court deferred adjudication of guilt and placed him on eight years community supervision.

On appellant's appeal of the denial of the motion to suppress, the court of appeals, finding that the search of the premises exceeded the scope of the warrant, reversed and remanded. *Amir v. State*, No. 01–99–00640–CR, 2000 WL 210601 (Tex. App.—Houston [1st Dist.] February 24, 2000) (not designated for publication), 2000 Tex.App. LEXIS 1222. We granted the state's petition for discretionary review[1] to

---

1. We granted the state's petition on the following grounds: "(I) Can a suspect circumvent the lawful execution of a search warrant by arbitrarily carving out a portion of his business with numbers placed on an interior door that indicate the interior door is part of another physical address? (II) Do police officers exceed the scope of a search warrant of a business by entering what appears to be a residential portion of the structure, but is nevertheless located within the confines of a business address? (III) Does the mere pres-

consider the conclusion of the court of appeals that the search exceeded the scope of the warrant. We reverse and remand.

Based on information provided by a confidential informant and an undercover police officer, the Houston Police Department obtained a warrant to search the business premises of U.S. Apparel for evidence relating to distribution of counterfeit merchandise. The search warrant stated:

YOU ARE THEREFORE COMMANDED to forthwith search the place therein named, to wit: U.S. Apparel which is located at 5627 Star Lane, Suite A, Houston, Harris County, Texas, with the authority to search for and seize any and all items ... that may be found therein including, but not limited to counterfeit Levi,[sic] Strauss & Co. jeans, counterfeit Nike shirts, counterfeit merchandise, documents and records of U.S. Apparel pertaining to counterfeit merchandise ... and any computer equipment used in the operation of U.S. Apparel.

At the time of the search, the exterior of the building occupied by U.S. Apparel appeared to be divided into two halves, each with its own address. One half was occupied by U.S. Apparel at 5627 Star Lane, Suite A, the other half by Texas International Motors at 5625 Star Lane. An unmarked exterior door led to the residence inside U.S. Apparel. Pursuant to the warrant, police officers entered U.S. Apparel at 5627 Star Lane, Suite A. They walked through a reception area to a warehouse area, and then up the stairs to the second floor of the building. On the second floor, the officers found an unlocked door marked "5625" and entered the room beyond, where they found appellant and two women. Appellant asserts that this room is his residence and is not part of 5627 A Star Lane. Over appellant's objections, the officers, with the assistance of a narcotics dog, searched the entire premises of 5627, including the area which appellant claimed was his residence. They seized cocaine, drug paraphernalia, and a semiautomatic pistol.

At the suppression hearing, the state called as witnesses three police officers who had participated in the execution of the search warrant. The state also introduced into evidence copies of appellant's Texas driver's license and Texas identification card and a copy of the search warrant, as well as various photographs and a videotape depicting the scene of the search. Appellant introduced into evidence a photograph showing a safe on the premises which the police had broken open.[2]

At the conclusion of the hearing, the trial court denied the motion to suppress, stating:

And my opinion is they had a search warrant for 5627 Star Lane. The fact

ence of four numbers placed on the interior door of a business that is the subject of a valid search warrant create an additional area not covered by the search warrant? (IV) Can an individual carve out a cone of protection within the confines of his business by setting up an area of habitation within that same physical address? (V) Does a lawful search of the fixed premises of a business extend to every part of the premises, including an area used for residential purposes where contraband may likely be found? (VI) Can cocaine by seized as 'mere evidence' when it is found on the premises that are the subject of a valid search warrant even though the cocaine was not named in the search warrant and was not connected to the crime being investigated?"

2. Appellant also attempted to introduce into evidence a utility bill from Houston Light & Power. After the state objected on various grounds, the trial court excluded the utility bill on the ground that it was irrelevant. Although appellant made a bill of exception concerning this matter, he did not appeal the exclusion of this evidence.

that the defendant carved out a portion of 5627 and placed a designation of 5625 on the door that entered into another portion of 5627 doesn't mean all of a sudden now that the officers have to go back and get a new search warrant. The State brought out if they got a search warrant for 5625, they would be searching the International Motors Company next door, which has no connection to this room that is designated 5625 found within 5627. However, would you ever get a warrant to this room with the 5625 posted on the door without their [sic] being a confusion as to which 5625 we are talking about? To me, the warrant was for 5627, suite A. They searched 5627, Suite A.

The court of appeals, in reversing the trial court's denial of the motion to suppress, noted, *inter alia*, that the warrant called for the search of U.S. Apparel at 5627 Star Lane, Suite A, Houston, Harris County, Texas, but did not call for the search of appellant's residential area marked 5625, which was located inside U.S. Apparel at 5627 A. *Amir*, 2000 WL 210601, at *2, 2000 Tex.App. LEXIS 1222, at *6. It found that U.S. Apparel and appellant's residence were separated by walls and a door that was marked with a different address, so that they were not the same entity. *Id.* at *2, 2000 Tex.App. LEXIS 1222, at *7. It further found that: appellant's residence could not have been reasonably confused with the premises of U.S. Apparel; when the police entered the door, appellant informed them that they were in his residence; and the area contained amenities such as a bedroom, a bathroom, a kitchen, and a living room, while the U.S. Apparel premises contained a reception area, a warehouse area, and offices. *Id.* Based on this, the court found that the possibility of invasion of an innocent third party's privacy was too great to validate the search and that the discrepan-

cies should have been investigated before the search. *Id.* at *3, 2000 Tex.App. LEXIS 1222, at *8. Thus, it held that the search was illegal, because it exceeded the scope of the warrant. *Id.* at *3–4, 2000 Tex.App. LEXIS 1222, at *10.

In reversing the trial court's denial of the motion to suppress, the court of appeals set out the relevant standards of review on a motion to suppress, stating:

> In a suppression hearing, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ballard,* 987 S.W.2d 889, 891 (Tex.Crim.App.1999). We afford almost total deference to a trial judge's determination of historical facts that the record supports, especially when the findings are based on an evaluation of credibility and demeanor. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). We review *de novo* a trial judge's determination of mixed questions of law and fact that do not turn on an evaluation of credibility. *Id.* On a question of the application of law to facts, we review the evidence in the light most favorable to the trial judge's ruling. *Id.*

*Id.* at *1, 2000 Tex.App. LEXIS 1222, at *4. However, the court of appeals failed to set out what evidence was presented at the hearing on the motion to suppress or its own application of law to facts.

The warrant authorized the police to "search the place therein named, to wit: U.S. Apparel which is located at 5627 Star Lane, Suite A. . . ." The trial court found, and the parties do not dispute, that appellant's claimed residence was connected by a unlocked door to the 5627 A address and was not connected to the 5625 address. The trial court also found that appellant had "carved out" a portion of the 5627

address and placed the numbers 5625 on the door, that 5625 is the address of another business that had no connection to U.S. Apparel, and that business records for U.S. Apparel were found in the residence area. In addition, evidence admitted at the suppression hearing showed that, when appellant obtained a Texas driver's license, he stated to the Department of Public Safety that 5627 A Star Lane was his home address, thus conceding that his residence was part of 5627 A Star Lane.

Federal case law on this issue generally holds that the scope of the warrant was not exceeded in circumstances similar to those presented here. *See, e.g., United States v. Prout,* 526 F.2d 380, 385–8 (5th Cir.) (apartment located in building attached to building containing premises specified in warrant held to be part of those premises, where entrance to the latter opened into foyer shared with the former), *cert. denied,* 429 U.S. 840, 97 S.Ct. 114, 50 L.Ed.2d 109 (1976); *United States v. Wright,* 468 F.2d 1184, 1185–6 (6th Cir. 1972) (building attached to premises specified in warrant held to be part of those premises, where door connected the two and the attached building was generally considered by witnesses to be part of the named premises), *cert. denied,* 412 U.S. 938, 93 S.Ct. 2771, 37 L.Ed.2d 397 (1973); *United States v. Evans,* 320 F.2d 482, 483 (6th Cir.1963) (attic attached to premises specified in warrant held to be part of premises, where attic could be accessed only through the premises named in the warrant and door between the two could not be locked or fastened from either side); *see also United States v. Kaye,* 432 F.2d 647, 649 (D.C.Cir.1970) (search of apartment attached to store specified in warrant held invalid, where there was no access to

store from apartment, and no apparent connection between the two).

Based on the evidence adduced at the hearing and the trial court's findings, we hold that the court of appeals erred in holding that the search exceeded the scope of the warrant. The state's third ground for review is sustained.[3] The judgment of the court of appeals is reversed, and the cause is remanded for proceedings consistent with this opinion.

KELLER, P.J., filed a concurring opinion, in which KEASLER and HERVEY, JJ., joined.

KELLER, P.J., filed a concurring opinion in which KEASLER, and HERVEY, JJ., joined.

I join the Court's opinion. The present case involves the scope of a search warrant. We are asked to decide whether a warrant to search the premises of a business extends to a residence area contained within the business premises. The Court implicitly concludes that the trial court was within its discretion in finding the residence area to be part of the business premises. Although I agree with this conclusion, our opinion would be more helpful to law enforcement and the bench and bar if we explained in detail why the search was permissible here. Our opinion would also be more helpful if we analyzed whether the police could reasonably believe that the properties were the same rather than whether the properties were in fact the same. That the properties involved are in fact the same may make a search valid only by happenstance, i.e. a search that appears to exceed the scope of the warrant can be valid if it is later determined that the search did not in fact exceed the warrant's scope. In the present case, howev-

---

**3.** Based on our disposition of the state's third ground for review, it is unnecessary for us to review the remaining grounds. Therefore, those grounds are dismissed.

er, the police had sufficient reason to believe that the residence area was a part of the business premises at the time the search was conducted, and hence, I take this opportunity to explain the factors that made this search valid in appearance as well as in reality.

## A. Background

Based upon information provided by a confidential informant and an undercover police officer, the Houston Police Department obtained a warrant to search the premises of a business called U.S. Apparel, located at 5627 Star Lane, Suite A. The business was suspected of selling counterfeit merchandise. The search warrant provided:

> YOU ARE THEREFORE COMMANDED to forthwith search the place therein named, to wit: U.S. Apparel which is located at 5627 Star Lane, Suite A, Houston, Harris County, Texas, with the authority to search for and to seize any and all items which are more particularly described in the attached affidavit that may be found therein including, but not limited to counterfeit Levi, Strauss & Co. jeans, counterfeit Nike shirts, counterfeit merchandise, documents and records of U.S. Apparel pertaining to counterfeit merchandise, documents and records pertaining to ownership of U.S. Apparel, documents and records showing the names, addresses, and telephone numbers of employees of U.S. Apparel and/or any other witnesses with information concerning the operation of U.S. Apparel, and any computer equipment used in the operation of U.S. Apparel.

From the outside, the building occupied by U.S. Apparel appeared to be divided into two halves, each with its own address. One half of the building was occupied by U.S. Apparel at 5627 Star Lane, Suite A while the other half was occupied by Texas International Motors at 5625 Star Lane. U.S. Apparel had no relationship with Texas International Motors. Near the 5625 entrance to Texas International Motors was a gated, unmarked door. This door led to a residence area, but that fact could not be ascertained from viewing the building's exterior; the door appeared to be simply another ground floor entrance into the building.

The police executed the warrant by entering the marked entrance for U.S. Apparel. Inside they found a warehouse area and some business offices. In addition, on a second floor loft, the police found a door marked by the numbers "5625" as if it were an address. This door was unlocked, and when it was opened, a residence area was revealed, with appellant and two women found inside. In response to questioning, appellant admitted that he was the owner of U.S. Apparel. When asked for identification, appellant said that he had some ID in a desk downstairs in his office. An officer took appellant downstairs and appellant retrieved his driver's license from a desk. The driver's license showed appellant's address to be "5627 STAR LN NO A."

Appellant claimed that the residence area was in fact his residence and that it had a separate address than the business U.S. Apparel.[1] Against appellant's wishes,

---

1. While U.S. Apparel's address of 5627 *A* raises the possibility that there might be a 5627 *B*, no one has claimed that there is a 5627 B. At the motion to suppress hearing, appellant offered an electric utility bill in the name of "Rami Amir," appellant's brother, showing a service address of "5625 STAR LN B." However, Texas International Motors' section of the building was designated simply as "5625"—not 5625 A. Likewise, the loft residence area was marked "5625," not 5625 B. Because the loft residence was not marked with a "B," the trial court excluded the utility bill on the grounds of relevance but allowed

the police searched the entire residence area, including a locked safe. As a result of this search, officers found and seized cocaine, drug paraphernalia, and a semiautomatic pistol. It was later discovered that the unmarked outside entrance led to the residence area. However, while the interior door marked "5625" gave an occupant of the residence area access to U.S. Apparel's warehouse, there was no access from the residence area to Texas International Motor's portion of the building.

In a motion to suppress, appellant contended that the search of the loft residence area violated search and seizure provisions in the Fourth Amendment, the Texas Constitution, and the Texas Code of Criminal Procedure because the residence area was not within the scope of the search warrant. The trial judge held a hearing, at which witnesses testified to the facts outlined above. In denying the motion to suppress, the trial court found that the loft residence area was not a separate address from the business address of U.S. Apparel and that the "5625" on the door was fictitious:

> And my opinion is they had a search warrant for 5627 Star Lane. The fact that the defendant carved out a portion of 5627 and placed a designation of 5625 on the door that entered into another portion of 5627 doesn't mean all of a sudden now that the officers have to go back and get a new search warrant. The State brought out if they got a search warrant for 5625, they would be searching the International Motors Company next door, which has no connection to this room that is designated 5625 found within 5627. However, would you ever get a warrant to this

room with the 5625 posted on the door without their [sic] being a confusion as to which 5625 we are talking about? To me, the warrant was for 5627, Suite A. They searched 5627, Suite A. . . . And, again, I am not of the opinion that we can create a fictitious number and I can take a room that just happens to have a separate entrance and I can fictitiously put an address on it that has no bearing to relevance of where we really are and say, okay, that's a separate residence or a separate building and now you can't come in there because I think what you do is allow a person to hide behind the law and that is not what the intent of the law is. They searched 5627 as they had a reasonable right to do. In doing so, they came upon these drugs. And I think they properly seized them.

(Ellipsis inserted).

Subsequently appellant pled guilty, and in accordance with a plea agreement the trial court placed him on deferred adjudication probation. Appellant appealed the motion to suppress issue. The Court of Appeals reversed, agreeing with appellant's contention that the loft residence area was outside the scope of the search warrant.[2] The court held that the numbers on the door marked a different address, showing that U.S. Apparel and the loft residence were not the same entity.[3] The court also held that the residence could not have been reasonably confused with the premises of U.S. Apparel because appellant informed the officers that the loft residence area was his residence and because the area contained the amenities of a residence—a bedroom, bathroom, kitch-

---

its inclusion in the appellate record as a bill of exception.

**2.** *Amir v. State*, No. 01–99–00640–CR, slip op. at 4–8, 2000 WL 210601 (Tex.App.—Houston [1st Dist.], February 24, 2000).

**3.** *Id.* at 5.

en, and living room.[4] Finally, the court of appeals noted that, as far as the officers knew at the time, the door marked "5625" could have actually been a door to the neighboring business, Texas International Motor, and entering that door would have been a violation of that business' right to privacy.[5]

## B. Analysis

### 1. The issues

Fourth Amendment[6] claims are subject to a bifurcated standard of review. Appellate courts afford trial courts almost total deference on issues of historical fact and on mixed questions of law and fact that turn on an evaluation of credibility and demeanor.[7] Mixed questions that do not turn on credibility and demeanor are reviewed *de novo.*[8]

Under the Fourth Amendment, a search is not rendered illegal for exceeding the scope of a search warrant so long as those executing the warrant reasonably believed at the time that the place searched was covered by the warrant.[9] In *Maryland v. Garrison,* police officers procured a warrant to search an apartment building's "third floor apartment," occupied by Lawrence McWebb.[10] Based upon information supplied by a reliable informant, an inquiry of the utility company, and a visual inspection of the apartment building's exterior, the police reasonably concluded that there was only one apartment on the third floor and that the apartment was occupied by McWebb.[11] In fact, however, there were two apartments—one occupied by McWebb and the other occupied by Garrison.[12] When the police entered the third floor, the doors to both apartments were open.[13] Before they discovered that there were in fact two apartments, officers had already entered Garrison's apartment and found drugs and drug paraphernalia.[14] The Supreme Court held that this search of Garrison's apartment did not violate the Fourth Amendment because, before discovering the mistake, the police "perceived McWebb's apartment and the third-floor premises as one and the same." [15]

In light of *Garrison,* the present case raises the following question: At the time the search was conducted, was it reasonable for the police to believe that the loft residence area was a part of U.S. Apparel's premises? This question is a mixed

---

4. *Id.* at 6.

5. *Id.* at 7.

6. Although appellant advanced claims based upon three different provisions—found in the federal constitution, state constitution, and the Texas Code of Criminal Procedure respectively—the Court of Appeals did not explicitly state which of the three provisions it relied upon except to remark that the "error was constitutional in nature." As the Court of Appeals did not distinguish between state and federal constitutional provisions, I will assume that the protections conferred are the same and resolve this case based upon the Fourth Amendment.

7. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim.App.1997).

8. *Id.*

9. *Maryland v. Garrison,* 480 U.S. 79, 86–88, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). Or stated another way, the search is legal unless the police knew or should have known that the property searched fell outside the scope of the warrant. *Id.* at 86, 107 S.Ct. 1013.

10. *Id.* at 80, 107 S.Ct. 1013

11. *Id.* at 81, 107 S.Ct. 1013.

12. *Id.* at 86, 107 S.Ct. 1013.

13. *Id.* at 81, 107 S.Ct. 1013.

14. *Id.*

15. *Id.* at 88, 107 S.Ct. 1013.

question of law and fact under *Guzman*. The question contains a subsidiary issue of historical fact that turns on the credibility and demeanor of the witnesses: What information did the police possess? We must give almost total deference to the trial court's ruling in answering that subsidiary issue. Once this subsidiary issue is answered, however, the main question becomes one that does not turn on credibility and demeanor and is therefore reviewed *de novo*.

In the present case, the police testified that they were unaware of the existence of the residence area at the time the search warrant was obtained and at the time they entered U.S. Apparel to execute the warrant. The police also testified that they believed that the residence area was a part of the U.S. Apparel address and within the scope of the warrant. The trial court was free to believe these statements. Giving almost total deference to the trial court's decision with regard to this testimony, we hold that the record supports a finding that the police possessed no information about the properties other than what was apparent to them at the time the search was conducted.[16]

The important question then, is whether, based upon the information possessed at the time, the officers could have reasonably concluded that the residence area was a part of the premises of U.S. Apparel. I

have conducted research both in Texas and in out-of-state cases to assist in answering this question, and that research has failed to reveal any cases directly on point. All of the cases I found appear to have factual differences significant enough to render them distinguishable from the case at hand. Nevertheless, a review of the cases in this area of the law is helpful in illuminating the factors that are relevant to the determination before us.

### 2. *The cases*

Ordinarily, a search warrant must specify which unit of a multi-unit complex is subject to the search.[17] An exception has been recognized, however, when the defendant has control of the whole premises,[18] or when the officers did not know or had no reason to know that the structure contained multiple units.[19] Whether the search of a particular unit in a multi-unit complex falls within the scope of a warrant is a related but different question from whether a warrant to search a multi-unit complex was valid upon issuance. As *Garrison* illustrates, a warrant that erroneously describes a multi-unit building as a single unit is valid upon issuance so long as the officers obtaining the warrant reasonably believed at the time that the building was a single-unit building. Likewise, the search pursuant to that warrant is valid so long as the officers conducting the search

---

16. For example, although appellant submitted a separate utility bill for the residence area, we defer to an implied finding by the trial court that, at the time of the search, the police were unaware of this bill and were unaware that the utilities for the residence area were billed separately from those of U.S. Apparel (if in fact they were).

17. W.C. Crais, III, *Annotation, Search Warrant: Sufficiency of Description of Apartment or Room to be Searched in Multiple–Occupancy Structure*, 11 A.L.R.3d 1330, 1332–1333, §§ 2 & 3[a] (1967).

18. *Id.; Jacobs v. City of Chicago*, 215 F.3d 758, 767 (7th Cir.2000)(exception exists if targets of investigation have access to the entire structure); *United States v. Frazin*, 780 F.2d 1461, 1467 (9th Cir.), *cert. denied*, 479 U.S. 844, 107 S.Ct. 158, 93 L.Ed.2d 98 (1986); *Sadie v. State*, 488 So.2d 1368, 1372 (Ala. Crim.App.1986).

19. Crais, at 1333, 1344–1345, §§ 2 & 8; *Jacobs*, 215 F.3d at 768; *Sadie*, 488 So.2d at 1372.

reasonably believe they are searching a single unit, even though that belief later turns out to be erroneous.

A more complex question is raised by a defendant's control over multiple units. If a warrant can issue for the entire building of a multi-unit complex where all the units are controlled by the defendant, then obviously such a search warrant could be legally executed. A more difficult case is posed, however, by a search warrant that covers only a portion of a building and some question is raised about whether certain units are included within the search warrant's description. Common ownership, by itself, does not resolve the issue: a warrant to search a business would not authorize a search of a residence owned by the same person across town. And we should not be prepared to hold that a warrant to search a business automatically encompasses a residence found in the same building and owned by the same person. But a person's common ownership of different sections of a building is certainly a factor to consider in determining the reasonableness of believing that the different sections were all covered by the description contained in the search warrant.

Perhaps the classic example of a separate apartment upstairs from a business can be found in *United States v. Kaye*.[20] In that case, the entire building was leased to the defendant, but the building had two exterior doors separated by a partition.[21] One door, shown as 3618 14th Street, N.W., led to the defendant's business, an electronics store, which occupied the first floor and the basement of the building.[22] The other door opened from the street to a staircase that led to a second-story apartment.[23] The numerals "3618½" appeared above this other door.[24] There was no door or direct passage between the store and the apartment.[25] There were two electric meters, one for the store and one for the apartment, but only one gas meter.[26] Signs for the business were across the entire width of the building, below the windows of the second floor apartment.[27] The apartment was clearly a set of living quarters, although the defendant had a desk and kept some files there.[28]

The police obtained a warrant to search "the premises known as 3618 14th Street N.W."[29] Pursuant to that warrant, the police initially searched the first floor and basement of the building.[30] The street door to the second floor apartment was locked, and the police asked the store clerk for a key.[31] The store clerk replied that her employer—the defendant—had the only key to that door.[32] After the store clerk tried unsuccessfully to reach the defendant, the police forced the door and searched the apartment.[33] They found a stolen Ben & Howell projector, which they

20. 432 F.2d 647 (D.C.1970).

21. *Id.* at 648.

22. *Id.*

23. *Id.*

24. *Id.*

25. *Id.*

26. *Id.*

27. *Id.*

28. *Id.*

29. *Id.* at 649.

30. *Id.* at 648.

31. *Id.*

32. *Id.*

33. *Id.* at 648–649.

seized.[34] The defendant filed a motion to suppress the projector, the motion was denied, and he appealed.[35]

The D.C. Circuit held that the evidence should have been suppressed.[36] The court explained that the "store and apartment were not an integrated unit but were two separate and distinct parts of the building. There was no access to the apartment from the store and no apparent connection between the two."[37]

Other courts have invalidated searches of adjacent areas owned by the same person on the basis that those areas fell outside the scope of the search warrant. In *Keiningham v. United States,* the defendants occupied two houses on adjacent lots.[38] A warrant to search one of the houses did not authorize search of the other despite the fact that a door had been freshly cut through a partition between the two lots.[39] In *State v. Erickson,* the police obtained a warrant to search the west half of a duplex.[40] Both halves of the duplex had their own basement but there was a door at the basement level that connected the two.[41] Although the door had a padlock on it, the door had apparently been tampered with and was unlocked.[42] The North Dakota Supreme Court found that

the warrant did not authorize a search of the basement of the other half of the duplex.[43] In *Commonwealth v. Hall,* the police secured a warrant to search a second floor apartment.[44] Although the same person controlled both the second and third floor apartments, the Massachusetts Supreme Court held that a search of the third floor apartment fell outside the scope of the warrant.[45]

However, in *United States v. Prout,* the Fifth Circuit upheld a search of a residential area within the same building as a business although the residential area was not described in the warrant.[46] The warrant named the premises to be searched as "Quick Sales Real Estate Office, 1001 Nunez Street, New Orleans, La."[47] The real estate office was a one story building attached to a slightly taller two story building, in which a residence was located.[48] The residence had a municipal address of 441 Newton Street.[49] But the Nunez street entrance, which was unmarked, opened onto a common foyer shared by the real estate office and the kitchen for the residence, each of which had an interior door which opened into the foyer.[50] Above the interior door to the residence was the number "441 RE."[51] On each occasion that

---

34. *Id.* at 649.

35. *Id.*

36. *Id.* at 649–650.

37. *Id.* at 649.

38. 287 F.2d 126, 129 (D.C.Cir.1960).

39. *Id.*

40. 496 N.W.2d 555, 557 (N.D.1993).

41. *Id.* at 557–558.

42. *Id.*

43. *Id.* at 560–561.

44. 366 Mass. 790, 323 N.E.2d 319, 325 (1975).

45. *Id.* at 325–326.

46. 526 F.2d 380, 388 (5th Cir.), *rehearing denied* 529 F.2d 999 (5th Cir.), *cert. denied,* 429 U.S. 840, 97 S.Ct. 114, 50 L.Ed.2d 109 (1976).

47. *Id.* at 386.

48. *Id.*

49. *Id.*

50. *Id.*

51. *Prout,* 529 F.2d at 999 (opinion on rehearing).

he was observed by surveillance agents, the defendant, along with another person named Amos, entered the residence through the Nunez street entrance.[52] The police entered the Nunez street entrance and searched the residence.[53] In upholding the search, the Fifth Circuit concluded: "Given the physical layout of the premises and their use by Prout and Amos, as observed by surveillance officers, a warrant describing the premises as '1001 Nunez Street' was sufficient" to authorize a search of the residence.[54]

Several other cases have held that a separate physical address does not exclude a place from the scope of a search warrant if other factors show that the place searched is connected with the place described in the warrant. In *Cannady v. State*, the search warrant permitted a search of an office suite at 6927 Long Point Road.[55] An adjacent office suite existed in the same building but had an address of 6929 Long Point Road.[56] The partitions between the two office suites had been removed, and police executing the warrant saw men running from the 6927 area to the 6929 area.[57] We held that a search of the 6929 address was reasonable under the circumstances.[58] In *Short v. District of Columbia*, the search warrant described a shop at 1025 H Street, N.E.[59] At the back of the shop, separated from the rest of the premises by a partial partition and a curtain, was a room that used to have an entrance at 738 Eleventh Street, but that entrance had been boarded up, and the 1025 H Street entrance was the only way to access that particular area.[60] The court held that this back room was a part of the shop at 1025 H Street.[61] In *United States v. Evans*, the police had a warrant to search 1000 Baldwin Street, which was the south half of a duplex house.[62] The north half of the duplex had the address 1004 Baldwin Street and belonged to a different family.[63] Each side had an attic, with a partition wall separating the attics in the two halves of the duplex.[64] During their search of the south half of the duplex, the police discovered that a door had been cut through the partition between the attics and that the entrance on the 1004 side had been sealed off.[65] The police searched the attic on the 1004 side and found an illegal still.[66] The Sixth Circuit agreed with the trial court's holding that the entire attic was a part of the 1000 portion of the premises.[67]

In other cases, courts have held that a search warrant covers structures not described in the warrant if the structures appear to be a part of, or appurtenant to, the property described in the warrant. In *United States v. Wright*, the police obtained a warrant to search "the premises

---

52. *Prout*, 526 F.2d at 387

53. *Id.* at 386

54. *Id.* at 388.

55. 582 S.W.2d 467, 468 (Tex.Crim.App.1979).

56. *Id.* at 469.

57. *Id.*

58. *Id.*

59. 300 A.2d 450, 451 (D.C.App.1973).

60. *Id.*

61. *Id.*

62. 320 F.2d 482, 483 (6th Cir.1963).

63. *Id.*

64. *Id.*

65. *Id.*

66. *Id.*

67. *Id.*

known as The New Plaza Lounge, 725 Monmouth Street, Newport Kentucky, being a three-story red brick building." [68] The defendant contended that this warrant did not authorize the search of a one-story cement block building attached to the three story brick building.[69] The Sixth Circuit held that the trial court was justified in concluding that one story cement building was a part of the three story brick building, and hence, covered by the warrant.[70] In *Commonwealth v. Scala,* the warrant authorized a search of "the entire apartment located on the second floor above a business establishment." [71] While only two floors were evident from exterior observation, the building also had a third floor attic.[72] In concluding that the third floor attic was "part and parcel of the second floor apartment," the Massachusetts Supreme Court observed: "Its single entrance was via the second floor apartment; it was directly above and adjacent to that apartment and had no separate address; there were no other apartments sharing the attic, which apparently had no connection with the first floor business establishment." [73] Other courts have held a warrant's description of a business on the first floor of a building to include a basement [74] or a balcony [75] when the owner of the first floor business had exclusive access to the area in question. The Supreme Court of Indiana has held that a search warrant for a particular residential address empowers the police to search a tent in the backyard, even though the tent may be used as separate living quarters.[76]

Finally, one court has held that a warrant to search the offices of a brokerage firm also permitted the search of a law firm's offices, when the offices of the brokerage firm and the law firm were commingled.[77] Although most of these cases address the question of whether the search exceeded the scope of the warrant in actual fact, they are also instructive in determining under what circumstances a police officer can reasonably believe that a particular area falls within a warrant's description.

### 3. *Application*

While the present case shares some common elements with the cases in which a search of adjoining premises was found to fall outside the scope of the warrant, there are also striking differences. In all of the cases, the properties were under common ownership. While *Keiningham* involved different buildings, *Kaye, Erickson,* and *Hall* involved a single building, as in the present case. However, in *Kaye, Keiningham,* and *Erickson,* the premises searched had a separate address on the exterior of the building from the premises described in the warrant, but in the present case, the residence area displayed no separate address on the building's exteri-

68. 468 F.2d 1184, 1185 (6th Cir.1972), *cert. denied,* 412 U.S. 938, 93 S.Ct. 2771, 37 L.Ed.2d 397 (1973).

69. *Id.*

70. *Id.* at 1186.

71. 380 Mass. 500, 404 N.E.2d 83, 89 (1980).

72. *Id.*

73. *Id.*

74. *State v. Cote,* 126 N.H. 514, 493 A.2d 1170, 1176–1178 (1985).

75. *Rainey v. State,* 74 Wis.2d 189, 246 N.W.2d 529, 533–536 (1976).

76. *Sowers v. State,* 724 N.E.2d 588, 590–591 (Ind.2000), *cert. denied,* — U.S. —, 121 S.Ct. 118, 148 L.Ed.2d 74 (2000).

77. *National City Trading Corp. v. United States,* 635 F.2d 1020, 1023–1025 (2nd Cir. 1980).

or. In *Kaye, Keiningham,* and *Hall,* there was no interior connection between two premises involved, but in the present case, an interior door connected the warehouse of U.S. Apparel to the loft residence area. In *Kaye,* the door to the upstairs apartment was locked at the time of the search, but in the present case, the interior door to the loft residence area was unlocked. In addition, in the present case, appellant's personal identification (his driver's license) was inside a desk in the warehouse/office area, and the address of U.S. Apparel—not the supposedly separate address displayed on the interior door to the loft residence area—was listed as appellant's residence. And the numerals displayed on the interior door to the loft residence area represented an address that the police knew belonged to an unrelated business next door.

The present case appears to be more like *Prout.* In both cases, a single building had two separate addresses, an interior door connected the place described in the warrant to the area that was searched, and that interior door posted an address number. And in both cases the building's exterior failed to place the police on notice that the area searched was separate from the place described in the warrant. In *Prout,* the interior door led to the residence whose different address was posted outside, but the exterior door facing the street described in the warrant failed to place the police on notice that there were two separate addresses, and the police saw the defendant entering the residence through that unmarked exterior door. In the present case, an address number posted on the interior door to the residence matched an address posted on the building outside, but the residence had no connection to that part of the building. The exterior door that led to the residence area had no marked address, the police encountered the defendant through the interior door from the warehouse area, and the defen-

dant's driver's license listed the address for U.S. Apparel as his home address.

The present case also shares some characteristics with the cases that have upheld the search of an area determined to be a part of, or appurtenant to, premises described in the warrant. These cases generally focus on whether there was a meaningful separation between the two areas in question and whether the disputed area could be accessed only from the premises described in the warrant. While a wall and an interior door divided the warehouse from the loft residence, when the police came upon the door, it appeared to lead to an area that was contained within the warehouse premises: the door was on a second floor loft within the warehouse and was unlocked. The Court of Appeals suggested that entry through that interior door might have appeared at the time to be a violation of Texas International Motors' right to privacy because the interior door was marked with that business's address. But the residence area did not belong to Texas International Motors; that business's right to privacy is not at issue here. And the police had no reason to believe that a residence lay behind the door in question until the door was actually opened. Before that point, the only apparent possibilities were that the door led to the adjacent business next door or it led to another part of the U.S. Apparel's warehouse. Given the placement of the door and the unlocked status of that door, the police had sufficient reason to believe that the door actually led to another part of U.S. Apparel, and it was not unreasonable for law enforcement agents to open the door to ascertain where it led. Had that door led to a storeroom with no other entrance or exit, no one would contend that the police exceeded the scope of the search warrant.

Once the interior door was opened, the police had every reason to believe that the address posted on the door was a fictitious one. The police knew at that point that no separate address for this residence was posted on the building's exterior. They also had probable cause to believe that the address posted on the interior door could not be a correct address because it belonged to an unrelated business next door. Upon discovering the defendant and finding out that he owned U.S. Apparel, the police had further reason to believe that the residence area was in fact a part of U.S. Apparel. The reasonableness of such a belief was further bolstered by the fact that appellant kept his driver's license in the warehouse/office portion of the premises and that this driver's license listed appellant's home address as 5627 Star Lane No A—the address of U.S. Apparel. Although the residence area did have a separate entrance, this entrance was not marked on the exterior of the building, and it was on the ground; so, the police had no reason to believe, at the time they discovered the area's residential character, that there was another entrance. When they did ascertain the existence of a separate entrance, the police also discovered that the residence area had no connection with Texas International Motors, whose address was displayed on the interior door. This discovery added further support for a belief that the address so displayed was fictitious, designed merely to confuse law enforcement agents.

So the police had numerous reasons to believe the residence area was a part of U.S. Apparel: a shared, unlocked interior door from a loft within the warehouse premises, no separate exterior address markings, interior address markings that appeared to be incorrect, the same person owning both premises, a driver's license that was kept in the warehouse part of the building, and the fact that the driver's license listed U.S. Apparel's address as appellant's home address. The record before us supports a holding that, as a result of the circumstances present at the time the search warrant was executed, the police reasonably believed the loft residence area to be a part of U.S. Apparel.