**Ronen Jack AMIR, Appellant,**

v.

**The STATE of Texas.**

**No. 287–02.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 18, 2002.

Brian Wice, Houston, for appellant.

S. Elaine Roch, Assist. DA, Houston, Matthew Paul, State's Attorney, Austin, for state.

4. Tex.R.App. P. 59.1.

*OPINION DISSENTING TO REFUSAL OF APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

MEYERS, J, filed a dissenting opinion, in which PRICE and COCHRAN, JJ., joined.

In his second ground for review, appellant asks:

> WHETHER THE COURT OF APPEALS ERRED IN HOLDING THAT THE ENTRY OF A DRUG DOG INSIDE APPELLANT'S BEDROOM DID NOT EXCEED THE SCOPE OF A SEARCH WARRANT ISSUED TO SEARCH FOR AND TO SEIZE ITEMS OTHER THAN NARCOTICS.

Because I believe that this ground for review presents an important question of law about the proper scope and execution of a search warrant, and whether the legitimacy of a search can be invalidated by a search for items not named in the warrant, I dissent to the Court's denial of this ground for review.

On June 29, 1998, officers from the Houston Police Department executed a search warrant, which provided:

> YOU ARE THEREFORE COMMANDED to forthwith search the place therein named, to wit: U.S. Apparel which is located at 5627 Star Lane, Suite A, Houston, Harris County, Texas, with the authority to search for and seize any and all items ... that may be found therein including, but not limited to counterfeit Levi, Strauss & Co. jeans, counterfeit Nike shirts, counterfeit merchandise, documents and records of U.S. Apparel pertaining to counterfeit merchandise, documents and records pertaining to ownership of U.S. Apparel, documents and records pertaining to ownership of U.S. Apparel, documents and records showing the names, addresses, and tele-

phone numbers of employees of U.S. Apparel and/or any other witnesses with information concerning the operation of U.S. Apparel, and any computer equipment used in the operation of U.S. Apparel.

The officers executing this warrant searched the entire premises, including an area that appellant claimed was his private residence, with the assistance of a drug-sniffing dog. At the suppression hearing, the dog handler testified that the dog entered a bedroom in appellant's residence and alerted on a night stand.[1] The night stand contained cocaine. The dog also alerted on a locked safe, which contained cocaine. Appellant was charged by indictment with possession of a controlled substance, cocaine. After the trial court denied his motion to suppress, appellant pled guilty in accordance with a plea agreement. Pursuant to that agreement, the trial court deferred adjudication of guilt and placed appellant on eight years of community supervision. The trial court also required appellant to pay a $1,000.00 fine.

On direct appeal, the First Court of Appeals reversed the conviction because it determined that the search of the part of the building that appellant claimed to be his private residence exceeded the scope of the warrant. *Amir v. State*, No. 01–99–00640–CR, 2000 WL 210601 (Tex.App.-Houston [1st Dist.] February 24, 2000) (not designated for publication). We reversed the judgment and remanded the cause to Court of Appeals after concluding that the search of the alleged residence did not exceed the scope of the warrant. *Amir v. State*, 45 S.W.3d 88 (Tex.Crim.App.2001). On remand, the Court of Appeals considered appellant's remaining points of error and affirmed appellant's conviction.[2] *Amir v. State*, No. 01–99–00640–CR, 2002 WL 58571 (Tex.App.-Houston [1st Dist.] January 17, 2002) (not designated for publication) (op. on remand). It held, *inter alia*, that the presence of the drug-sniffing dog did not exceed the scope of the warrant:

> The warrant allowed a search for items connected with counterfeit merchandise and business records pertaining to U.S. Apparel. The police were authorized to search wherever business records might be hidden inside the residence. We conclude that it was reasonable for the officers to believe, based on the totality of the circumstances, that the night stand might contain items described in the warrant …. The warrant described the scope of the search, and the officer's search stayed within it. The presence of the dog did not enlarge the scope of the warrant.

*Id.* at 8–11. Appellant then petitioned this Court for discretionary review so that we could address whether or not the drug-sniffing dog's assistance caused the searches to exceed the scope of an otherwise legitimate warrant. According to appellant, the dog's presence and entry into appellant's residence exceeded the scope of the warrant because no evidence of probable cause to search for drugs had been presented to or found by the magistrate who issued the warrant.

The Court of Appeals' opinion addressed only whether the cocaine seized from appellant's residence fell within the warrant. *Id.* Essentially, the court reasoned that because the officers would probably have

---

1. Specifically, the dog's handler stated that the dog opened the drawer to the night stand and was then given a reward.

2. Appellant had three remaining points of error in the Court of Appeals. Only one of these, the point of error relating to the drug-sniffing dog, is relevant to this opinion.

searched the places in which the narcotics were found regardless of the dog's presence, the dog's presence did not affect the validity of the search. This does not adequately address appellant's arguments because it never answers the fundamental question of the case: why was a drug-sniffing dog used in a search for a company's counterfeit clothing and business records?

A search warrant may not issue unless it is based upon probable cause. U.S. Const. amend. IV; Tex. Const. art. I, sec. 9; Tex. Code Crim. Proc. art. 18.01 (Vernon Supp. 2002). Probable cause must be established by setting forth substantial facts in a sworn affidavit presented to the issuing magistrate. Tex.Code Crim. Proc. Ann. art. 18.01(b).

Here, Houston Police officers had a warrant to search for counterfeit clothing and business records. The probable cause affidavit supporting the warrant stated that the affiant "[had] reason to believe and [did] believe that *instruments used in the commission of the offense of Trademark Counterfeiting* ... [were] located within U.S. Apparel." (Emphasis added). Yet despite the recitations in the affidavit, when the officers executed the warrant, they brought along a dog that had no training in searching for anything *other* than narcotics, as illustrated by the following colloquy from the suppression hearing:

> COURT: Are you normally called to the scene specifically because your canine unit is trained to alert on drugs? Is that basically what your purpose is?
>
> DOG HANDLER: Yes, Sir.
>
> Q: Does your canine—does your dog alert on counterfeit Levis?
>
> A: No, Sir.

Q: So if you got a search warrant for the Levis, what does a canine unit dog [sic—do?] at a scene to be executed on for counterfeit items if your purpose is to find drugs, do you know?

A: I have no idea, your Honor.

. . . .

DEFENSE COUNSEL: Let me ask you one other thing. Your dog is not trained to locate business records, is it?

DOG HANDLER: No sir, just narcotics.

Q: The dog is just narcotics?

A: Yes, sir.

Q: Not anything else?

A: That's true.

Any search performed or assisted by the dog was, by definition, a search for drugs, as the dog had no other training. Any search for drugs was a search for something outside the scope of the warrant. The Court of Appeals limited its decision to the legitimacy of the search without considering the impact of the drug-sniffing dog's presence. I think that the opinion thereby decides an important question of state and federal law that should be addressed by this Court. There are crucial public policy implications in legitimizing the unusual warrant execution techniques utilized in appellant's case. Bringing along technology or animals that will ferret out *only* items not named in a warrant, based on the likelihood that the items found will coincide with the possible location of the items that *are* specified in the warrant,[3] is not a practice that should become routine. I therefore dissent to the

---

**3.** Although it is within the realm of possibility, it is unlikely to think that either counterfeit clothing or business records would be found in a bedroom night stand.

denial of appellant's petition for discretionary review.