LESTER McTYRE v. THE STATE.

No. 11701.   Delivered June 25, 1929.

The opinion states the case.

*J. H. French* of Daingerfield and *J. A. Ward* of Mt. Pleasant for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—The offense is the possession of mash for the purpose of manufacturing intoxicating liquor; punishment fixed at confinement in the penitentiary for one year.

Operating under a search warrant, officers searched the premises of the appellant consisting of his mansion, an outhouse about 75 feet from the mansion, a chicken house, and an inclosure of land

about 125 yards east of the mansion. In the inclosure mentioned the officers found mash and other material and articles suitable for and adapted to the making of intoxicating liquor. However, this was not a part of the curtilage and search of the pasture was permissible without a warrant, and what is hereafter said is not to be applied to the search of the pasture. See Wolf v. State, 9 S. W. (2d) 350. In the mansion there was found a half-gallon jar containing a small quantity of whisky. Other circumstances tending to connect the appellant with the manufacture of intoxicating liquor upon his premises, not material to recite, were disclosed by the officers.

The receipt of the evidence was attacked upon the ground that the search was in violation of the Constitution and statutes of the state, and that its receipt was inhibited by Art. 727a, C. C. P., 1925, which renders inadmissible evidence obtained through an illegal search. The affidavit upon which the search warrant was based described the place as a private residence of the appellant, situated in Morris County, Texas, about three miles in a southwesterly direction from the town of Daingerfield.

The attack upon the affidavit is untenable. It contained affirmative and detailed statements touching the information upon which the affidavit was based sufficient to comply with the law defining "probable cause." See Chapin v. State, 107 Tex. Crim. Rep. 477. The search warrant commanded the officers to search the "private residence, outbuildings and premises occupied by the appellant." The position taken by the appellant is that the affidavit was capable of supporting the search warrant for the search of a private residence but that that part of the warrant which authorized the search of the outbuildings and premises occupied by the appellant was not supported by the affidavit; that the variance between the affidavit and the search warrant rendered the search of the buildings and premises other than the mansion house illegal. A description of the premises to be searched in the affidavit and in the warrant is an essential requisite of a valid search warrant. It is so declared in the Bill of Rights, Art. I, Sec. 9, of the Texas Constitution wherein it is said:

"No warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation."

The description of the place in the affidavit limits and controls

the description in the warrant. See Cornelius on Search & Seizure, p. 351, sec. 132; also page 316, sec. 116.

In Art. 691, P. C., 1925, it is declared that a search warrant may be issued for the purpose of seizing and destroying any intoxicating liquor possessed or sold, or to be sold, transported or manufactured in violation of the law, and for seizing and destroying instrumentalities for the manufacture, transportation and sale of such liquor, but as to a "private residence," this language is used:

"No warrant shall be issued to search a private dwelling occupied as such, unless some part of it is used as a store, shop, hotel or boarding house, or for some purpose other than a private residence, or unless the affidavits of two credible persons show that such residence is a place where intoxicating liquor is sold or manufactured in violation of the terms of this act."

In the present instance the question arises, Does the description of the place to be searched as contained in the affidavit, namely, the private residence of the appellant, embrace the other parts of his premises which were described in the warrant and which were searched by the officers? In passing Art. 691, supra, the intention of the Legislature to make a distinction in the form and substance of an affidavit for a search warrant as between a private residence occupied as such and other places seems clear. To search a place other than a private dwelling under Title 6 of the Code of Criminal Procedure (which is made a part of Art. 691, supra, so far as may be) the affidavit for a search warrant under the *oath of but one credible person* would be sufficient, and a warrant may issue authorizing the search for *intoxicating liquor possessed, sold, transported or manufactured,* and *for containers, instrumentalities for the manufacture, transportation and unlawful possession for sale;* while for the search of a private dwelling the warrant shall issue only upon the affidavits of *two credible persons showing that such residence is a place where intoxicating liquor is sold or manufactured in violation of the law.* We have held in Wolf's case, 9 S. W. (2d) 350, that an unreasonable search is one which trenches upon the peaceful enjoyment of the house in which he dwells or in which he works and does business, and those things connected therewith, such as gardens, outhouses, and appurtenances necessary for the domestic comfort of the dwelling house or that in which the business is conducted. In its limitations, the immunity intended is analogous to that which applies to the curtilage of which the common law speaks, and does not render unreasonable the search of woods, fields, ravines or open

spaces not so connected with the place of business or dwelling house owned by the same individual. That is to say, unless the place ·to be searched comes within the purview of an unreasonable search as above indicated, the search may be made without a warrant.

Touching the meaning of the term "private dwelling," "private residence" or "private house," the precedents are numerous and apparently conflicting. Many of them are collated in Corpus Juris, Vol. 19, pages 843-844, and in Vol. 17, p. 437. The conflict is probably more apparent than real when the precedents are analyzed and considered in the light of the facts controlling in the decisions mentioned. Many of the precedents confine the term "private residence" or "private dwelling" to the mansion house alone while others extend it to the localities within the curtilage. In interpreting the statute under consideration (Art. 691, supra) the precedents mentioned furnish but an incomplete guide. From the language of the statute permitting a search of places other than a private residence upon numerous grounds and limiting the grounds upon which the search of a private dwelling occupied as such and not used for other purposes is permitted, the conclusion must follow that in the use of the term "private dwelling" or "private residence" in the statute, the Legislature meant to include no more than the mansion house itself and the ground upon which it was situated. To give it a broader meaning would thwart the evident purpose of the Legislature in the enactment of Art. 691, supra. This is true for the reason that if within the term "private residence" as used in the statute is included the outhouses and appurtenances, then to search any one of the outhouses or appurtenances within the curtilage, an affidavit and warrant requisite for a private dwelling would be required, that is, *made by credible persons on the ground that the private residence was a place where intoxicating liquor was sold or manufactured in violation of law.* Under such construction, if there was "probable cause" for believing that in one of the outhouses or the yards surrounding the residence, there was intoxicating liquor *possessed* for the purpose of sale, or *instrumentalities for the manufacture or transportation of intoxicating liquor, no search warrant could issue,* because the conditions prescribed in Art. 691, supra, as a predicate for the search of a private dwelling would not exist. However, giving the statute a construction which confines the term "private dwelling" to the mansion house, the State would be free, with an affidavit made by one credible person, to issue a search war-

rant upon any of the grounds named in the statute to search any of the premises save the private dwelling.

We are therefore constrained to conclude that the search warrant in the present instance based upon an affidavit describing the place as a "private residence" would not be authority for searching any of the premises of the appellant which were searched except the mansion house, and in that house there was found, according to the testimony, no evidence that *therein intoxicating liquors were sold or manufactured*. It follows that the evidence obtained in the search of the appurtenances was inadmissible, and that the judgment of conviction based thereon must be reversed. It is so ordered.

*Reversed and remanded.*

### CONCURRING OPINION.

HAWKINS, JUDGE.—I concur in the opinion of Presiding Judge Morrow as to the legal questions discussed and the reversal of the judgment. In order to avoid any possibility of misunderstanding I think it is not improper to say that the officers observed appellant coming from the direction of a pasture between which and the house was a cotton patch; the officers testified that they "back tracked" appellant to a point within fifteen or twenty steps of where five barrels were found which had recently contained "whisky mash ready to run." Mash was still flowing on the ground where the barrels had been recently overturned. This was found in a pasture and the evidence regarding it was admissible without a search warrant. Wolf v. State, 9 S. W. (2d) 350. Appellant did not testify but his wife gave evidence which made an issue as to whether appellant was coming from the place where the mash was found. The evidence which was improperly admitted as to finding in the outhouse jugs bearing the unmistakable odor of whisky could have been and doubtless was appropriated by the jury in determining that the mash was in the possession of appellant, and more particularly, the purpose for which he possessed it. This would prevent an affirmance of the judgment on the principle announced in Gurski v. State, 93 Tex. Cr. R. 612; Turner v. State, 95 Tex. Cr. R. 593; Cartwright v. State, 97 Tex. Cr. R. 230, and other like cases. The facts of the present case would call for the application of the recognized rule that the admission of illegal evidence material and pertinent to a controverted issue, and which is in addition to facts legally in evidence, is erroneous and hurtful and that a conviction under such circumstances should not be permitted to stand. See McWilliams v. State,

44 Tex. 116; Kelsey v. State, 4 S. W. (2d) 548, and authorities therein referred to.

### MODIFYING OPINION.

LATTIMORE, JUDGE.—I cannot refrain from expressing serious doubt as to the correctness of giving to the expression "private dwelling" or "private residence" the limited interpretation placed on it by my Brethren in this opinion, viz., restricting it to the actual house occupied by the family and the ground on which same stands. It seems to me more in consonance with the purpose of the exemptions regarding such residence, in both the Constitution and decisions of the courts,—to hold that the expression "private residence" was intended to, and it does, include those outhouses and appurtenances necessary to the use and occupancy of a private residence as the home of a family. In such case the finding of articles in a chicken house and the yard by a search under a warrant based on an affidavit to search only a private residence would be admissible, and the case should not be reversed, but I do not care to file a dissenting opinion.