Gwin H. LONG, Appellant

v.

The STATE of Texas.

No. 1028–03.

Court of Criminal Appeals of Texas.

April 21, 2004.

Michael P. Gibson, Dallas, for Appellant.

Davis S. Glickler, Special Crimes Division Office of the Attorney General, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

COCHRAN, J., delivered the opinion of the Court, in which MEYERS, PRICE, WOMACK, JOHNSON and HOLCOMB, JJ., joined.

The police officers in this case obtained a warrant to search the rural, gambling business premises of "Train's" which was explicitly described as a "silver in color passenger train car." We conclude that this warrant did not authorize the search of appellant's *home*, an entirely different and distinct structure—a red caboose— which was located nearby. There are, in fact, two problems with the present search.[1] First, there is no descriptive language in this warrant that would authorize the search of appellant's home as well as a search of the separate and independent business establishment. Second, there are no facts set out in the affidavit that would lead a reasonable officer executing this search warrant to have probable cause to believe that the gambling devices, paraphernalia, and business records described within the search warrant or affidavit would be found in appellant's home. We conclude that the officers violated Ms. Long's rights under the Fourth Amendment of the United States Constitution in their search of her home. Because the court of appeals, over a thoughtful dissent, held otherwise,[2] we reverse its judgment and remand for further proceedings.

## I.

Sgt. Scott Wilson, an undercover officer for the Texas Attorney General's Special

---

1. We granted the following ground for review:

   The Court of Appeals' opinion, holding that the trial court's finding that the officers executing the search warrant did not exceed the scope of the warrant by searching Appellant's residence which was not specifically described in the warrant resulting in an illegal search in violation of the Fourth Amendment to the United States Constitution and art. I § 9 of the Texas Constitution.

2. *Long v. State,* 108 S.W.3d 424 (Tex.App.-Tyler 2003).

Crimes Unit conducted an investigation into illegal gambling operations at appellant's business establishment, "Train's," which is located in a rural area of Henderson County. Sgt. Wilson went to "Train's" one evening to play eight-liner video gambling devices. He spoke with appellant, who told him that successful players were no longer rewarded with Wal–Mart gift certificates, but they were entered into a weekly contest to win a dinner for two and $50.00 cash. Sgt. Wilson returned on several other days, continued playing the eight-liners, and saw others doing so as well.

Based upon his investigation, Sgt. Wilson drafted a lengthy and thorough affidavit and search warrant which authorized a search of the "Train's" premises as well as appellant's arrest. Other police officers executed this warrant, and they searched not only the business establishment of "Train's," but also another train car located in the same vicinity,[3] and appellant's home which was a nearby red caboose. Neither of these structures were mentioned in the warrant or affidavit. The facts establishing probable cause to believe that appellant was operating a gambling business, owned gambling paraphernalia,

and kept records of gambling activity specified activity only at the silver colored passenger train car. When they searched appellant's home, officers seized cash, bank records, Wal–Mart gift certificates, and the keys to the eight-liner machines.

At trial appellant objected to the admission of any items seized from her home because the search warrant authorized a search only of "Train's." She claimed that the search of her home without either a warrant or exigent circumstances violated her Fourth Amendment rights. After hearing arguments, the trial court agreed with appellant and sustained her objection.[4] At the State's behest, however, the trial court changed its mind the next morning and allowed the admission of all items taken from appellant's home, including $1,200 in cash found underneath the mattress of her bed.

The jury convicted appellant of five gambling offenses, and the trial court assessed a sentence of 60 days in jail on each count, to be served concurrently, plus a fine of $1,000 on each of the five counts.

Appellant's sole point of error on appeal was that the trial court erred in admitting any evidence seized from her red-caboose home because that search was illegal. The

---

3. The officers did not take anything from this structure.

4. The State argued that the search warrant authorized the search of "the adjacent buildings which were also under the control and possession of the same person" as the owner of "Train's."

The trial court asked:
If he [Sgt. Wilson] wanted to search the other train car, why was it not specifically set forth in the warrant and the affidavit? What color is the other train car? ... You know, you were referring to, in the affidavit earlier it talks about the silver car. It never mentions a red car or any outbuildings or other buildings located on the property."
When the State told the trial judge that "[t]he third building searched is also a train or a

box car of some sort, is it not?", the trial judge responded:
We have a third building that was searched? ... When [sic] was the third building located? How many buildings do we have on this premises? ... If there's more than one building located on these premises, why weren't they described also? ... I note here on the silver train on State's Exhibit 3, above the doors there's a sign that says "open." I assume, you know, that kind of indicates maybe a business entity. It's open. Did the red car have any kind of sign on it that says "open" or "come on in"?
It did not. After considering all of the arguments, the trial court sustained appellant's objection.

court of appeals' majority correctly noted that "[s]earch warrants and affidavits should be considered in a common sense manner, and hypertechnical readings should be avoided."[5] It then analyzed a number of federal and state cases which had held that a search warrant describing a particular residence or building may include, within its scope, other "outbuildings" or areas that are closely connected to that described residence or building.[6] After reviewing that relevant case law, the court concluded that "the search warrant was properly construed as authorizing a search of the red caboose.... The fact that Appellant was also using the caboose as her residence does not alter our view."[7] Justice Griffith dissented and concluded that:

> the search exceeded the parameters permitted by the search warrant, and improperly intruded into the residence of Appellant without an authorizing search warrant, and, therefore, evidence obtained in the search of Appellant's residence should have been excluded from Appellant's trial.[8]

We granted appellant's petition for discretionary review to resolve this disagreement on a material question of law between justices on the same court of appeals.[9]

---

**5.** *Long*, 108 S.W.3d at 426.

**6.** *Id.* at 426–28.

**7.** *Id.* at 428.

**8.** *Id.* at 429 (Griffith, J., dissenting).

**9.** Tex.R.App. P. 66.3(e).

**10.** U.S. Const. amend. IV.

**11.** The search warrant begins by stating that the affidavit "is by this reference incorporated herein for all purposes," and then continues: "I find that the AFFIANT has probable cause

## II.

### A. What "premises" does the search warrant and affidavit describe?

■ One of the specific commands of the Fourth Amendment is that no warrant shall issue except one "particularly describing the place to be searched."[10] The present warrant and affidavit, taken together, provide a remarkably specific description of the place to be searched. The affidavit begins with this description:

1. THERE IS IN SEVEN POINTS, HENDERSON COUNTY, TEXAS, A SUSPECTED PLACE AND PREMISES DESCRIBED AND LOCATED AS FOLLOWS:

An unnamed business establishment known locally as Train's is located at 1075 Pritchett Lane, Seven Points, Henderson County, Texas. The structure is a silver in color passenger train car. The passenger train car is located north, 8/10 of a mile from State Highway 334 on the west side of Pritchett Lane, Seven Points, Henderson County, Texas. In front of this silver in color passenger train car is a black mail box located on the west side of Pritchett Lane with the numbers "1075". This is the only silver in color passenger train car located on Pritchett Lane 8/10 of a mile north of State Highway 334, Seven Points, Henderson County, Texas.[11]

for the belief he expresses therein and establishes the existence of proper grounds for the issuance of this warrant and is commanded to search the location described in the incorporated affidavit." The warrant continues: "YOU ARE THEREFORE COMMANDED, to enter and search the said suspected place and premises, to wit: unnamed business known as "Train's", 1075 Pritchett Lane, Seven Points, Henderson County, Texas, which is incorporated for all purposes herein [sic; presumably the warrant inadvertently omitted words to the effect of "as described in the attached affidavit" before the phrase "which is incorporated by all purposes herein"]."

From this superb description, we can go to Henderson County and find that silver passenger train car. We also know that there is only one such train car. It is silver, it is a passenger car, and it is a business. It is not red, it is not a caboose, and it is not a home. In front of this solitary silver passenger train car business establishment is a black mail box with the numbers "1075" written on it. Finding that mail box will help us find the silver passenger car right behind it.

Are we now to conclude that the affiant, having set out such an exemplary description of the specific property to be searched, did not mean what he said? Instead, was he really seeking a warrant to search any and all structures near the described business, including appellant's home? The affiant officer testified at trial that he knew the red caboose was appellant's home, so if he had probable cause to search her separate home as well as her business establishment, why did he not say so? Then the neutral magistrate could have decided whether there was probable cause to believe that appellant kept gam-

bling devices, paraphernalia and business records in her home as well as at the nearby business. To conclude that this description of the specific property to be searched includes, *sub silentio*, the right to search appellant's home subverts the objectives of the Fourth Amendment's Particularity Clause.

■ The constitutional objectives of requiring a "particular" description of the place to be searched include: 1) ensuring that the officer searches the right place; 2) confirming that probable cause is, in fact, established for the place described in the warrant; 3) limiting the officer's discretion and narrowing the scope of his search; 4) minimizing the danger of mistakenly searching the person or property of an innocent bystander or property owner; and 5) informing the owner of the officer's authority to search that specific location.[12] As one federal court has stated:

When investigators fail to limit themselves to the particulars in the warrant, both the particularity requirement and

It is well settled that when the affidavit is attached to the warrant, these documents should be considered together as defining the place to be searched, but the description in the affidavit controls over the language in the warrant itself. *Riojas v. State*, 530 S.W.2d 298, 303 (Tex.Crim.App.1975). Thus, the admirably specific description of the business establishment to be searched as described in the present affidavit controls over the less precise description in the warrant itself. *Id.*

12. *See Berger v. New York*, 388 U.S. 41, 58, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967) (" '[t]he proceeding by search warrant is a drastic one,' and must be carefully circumscribed so as to prevent unauthorized invasions of 'the sanctity of a man's home and the privacies of life.' ... The Fourth Amendment's requirement that a warrant 'particularly describ[e] the place to be searched, and the persons or things to be seized,' repudiated these general warrants and 'makes general searches ... impossible and prevents the seizure of one thing under a warrant describing another' ")

(internal citations omitted); *see generally* 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE, § 4.5, at 513 (3d ed.1996); *see also Etchieson v. State*, 574 S.W.2d 753, 759 (Tex.Crim.App.1978) (description of property in warrant must be sufficient to enable executing officer to locate and distinguish the property from others in the community); *Bridges v. State*, 574 S.W.2d 560, 562 (Tex.Crim.App.1978) (description of place to be searched must be sufficiently specific to protect innocent parties from a reasonable probability of a mistaken execution of a defective warrant); *Chambers v. State*, 508 S.W.2d 348, 352 (Tex.Crim.App.1974) (requirement that a search warrant be specific prohibits general searches and prevents the vesting of complete discretion in the officer who executes the warrant); *Taylor v. State*, 974 S.W.2d 851, 856 (Tex.App.-Houston [14th Dist.] 1998, no pet.) (setting out five objectives of the Particularity Clause and rationales for them).

the probable cause requirement are drained of all significance as restraining mechanisms, and the warrant limitation becomes a practical nullity. Obedience to the particularity requirement both in drafting and executing a search warrant is therefore essential to protect against the centuries-old fear of general searches and seizures.[13]

■ Of course, "[a] search made under authority of a search warrant may extend to the entire area covered by the warrant's description."[14] And, when courts examine the description of the place to be searched to determine the warrant's scope, they follow a common sense and practical approach, not a "Procrustean" or overly technical one.[15]

For example, as we stated in *Comeaux v. State*,[16] when a warrant uses the legal term "premises," courts should interpret its use in a given warrant to "portray the intent with which it was embraced in the document."[17] In *Comeaux*, officers obtained a warrant to search "a certain place and premises," namely the defendant's "residence, No. 1700 Brooklyn Street, City of Beaumont, Jefferson Co., Texas, the same being occupied and used by Walter Como [sic] and others, as a private dwelling."[18] This Court noted that a fair reading of this language authorized the officers to search "not only the mansion house but the garage [located about 40–50 feet away from the house] upon the same lot forming a part of the curtilage."[19] We reached the common-sense conclusion that "it is not within the province of this court to declare that the garage was not a part of the appellant's dwelling and therefore within the specific designations contained in the affidavit and warrant."[20] The right to enter and search a person's home—his bedroom, his bathroom, his kitchen, all of his most intimate preserves—must surely carry with it the right to search those areas less private and less protected that are nonetheless part and parcel of his residence, areas such as a garage, tool shed, or chicken coop. The right to invade and rummage through a man's home—his personal private castle—necessarily includes the right to search the less-private outbuildings. The converse is not true. Authorization to search the stables does not carry implicit authority to search the master's bedroom.

Thus, having described the business establishment known as Train's with such detail and thoroughness, the officers clearly had a right to search every nook and cranny of that business establishment—the silver passenger-train car with the "open" sign above the door. Appellant's home, however, was not within that business area.[21]

As the court of appeals in this case

---

**13.** *United States v. Heldt*, 668 F.2d 1238, 1257 (D.C.Cir.1981).

**14.** 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE, § 4.10(a), at 654 (3d ed.1996).

**15.** *See United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Ker v. California*, 374 U.S. 23, 33, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

**16.** 118 Tex.Crim. 223, 228–29, 42 S.W.2d 255, 258 (1931) (op. on reh'g).

**17.** *Id.* at 228, 42 S.W.2d 255.

**18.** *Id.* at 225, 42 S.W.2d 255.

**19.** *Id.* at 229, 42 S.W.2d 255.

**20.** *Id.*

**21.** *Compare Amir v. State*, 45 S.W.3d 88, 90–91 (Tex.Crim.App.2001) (when defendant "carved out" a portion of his business premises and used that connected portion as his residence, a warrant that specified the business address included the residence as well).

correctly noted,[22] cases from all jurisdictions have followed the reasoning in *Comeaux,* and held that if a search warrant/affidavit authorizes the search of a residence and its "premises,"[23] then the officers may generally search outlying structures within the curtilage of that residence.[24] Similarly, a search warrant/affidavit that authorizes the search of a specific business would include the search of nearby rooms or outlying structures, such as storage sheds, garages, or garbage containers, that would naturally serve some function for that business.[25]

**22.** *Long,* 108 S.W.3d at 426–28 (collecting and discussing pertinent cases from Texas and other jurisdictions).

**23.** It is true that some of this Court's earlier cases had used the phrase "place and premises" as a magical incantation and reached conclusions based more on technicalities than common sense. For example, in *Riojas v. State,* 530 S.W.2d 298 (Tex.Crim.App.1975), this Court held that because the warrant affidavit specifically described only the defendant's residence and two cars, the search of a tin shed behind the house—a location in which the defendant had told the affiant he stored "several lids of marijuana"—was not authorized by the warrant, even though the shed was admittedly within the curtilage of the house, and even though the affidavit requested authorization to search "the above premises." *Id.* at 300. Similarly, in *McTyre v. State,* 113 Tex.Crim. 31, 19 S.W.2d 49 (1929), the affidavit described the place to be searched as a "private residence," while the warrant commanded the officers to search the "private residence, outbuildings and premises occupied by the appellant." *Id.* at 32, 19 S.W.2d at 49–50. The officers searched not only the residence but also an outhouse approximately 75 feet from the house as well as a chicken house. This Court held that both the outhouse and chicken house were within the curtilage of the residence, but nonetheless, they were not specifically described within the affidavit which did not, like the warrant, include the magic phrase "place and premises." Therefore, the search of the outbuildings was illegal. Inclusion of the phrase "place and premises" should neither add to, nor detract from, a commonsensical and reasonable description of the location to be searched.

**24.** *See generally,* Rachel A. Campbell, *Search Warrant as Authorizing Search of Structures on Property Other Than Main House or Other Building or Location Other Than Designated Portion of Building,* 104 A.L.R.5th 165 (2002); *see, e.g., Cantu v. State,* 557 S.W.2d 107 (Tex.

Crim.App.1977) (chicken coop, 100–125 feet away from house, surrounded by fence attached to hurricane fence surrounding house, within "curtilage" when search warrant affidavit described premises as a "gray frame, 2 story residence surrounded by a hurricane fence and trees and curtilage (sic)"); *see also United States v. Bennett,* 170 F.3d 632, 638 (6th Cir.1999) (search of shop building covered by warrant that identified premises by street name and number and described house and detached shop building); *United States v. Estrella,* 104 F.3d 3, 9 (1st Cir.1997) (when search warrant for residence described premises "as a blue cape-style house with breezeway connecting a two-car garage" at specific location, "the common-sense meaning of the warrant was that the area to be searched included the garage"); *United States v. Earls,* 42 F.3d 1321, 1327 (10th Cir.1994) (concluding that a warrant that authorized search of residence also authorized search of detached garage, shed and office because those are the types of buildings which are typically part of he curtilage of a residence); *United States v. Moore,* 743 F.2d 254, 256 (5th Cir.1984) (search of garage not connected to described house was within scope of warrant permitting search of "building, house or place" of defendant); *United States v. Anderson,* 485 F.2d 239–40 (5th Cir.1973) (flowerbed outside house part of "residence" and subject to search); *but see State v. Barnett,* 788 S.W.2d 572, 575–77 (Tex.Crim.App.1990) (mere arrival of a car on property for which search warrant has been issued, *without more, does* not permit officers to search vehicle as being within curtilage of residence); *United States v. Watkins,* 179 F.3d 489, 494–95, 499 (6th Cir.1999) (search warrant description of residential property to be searched which failed to mention second, uninhabited house on property insufficient to justify its search under warrant, but "good faith" exception allowed use of seized evidence).

**25.** *See, e.g., Cannady v. State,* 582 S.W.2d 467, 468–69 (Tex.Crim.App.1979) (although

But private homes and public businesses are not fungible items for purposes of Fourth Amendment protection. Under the Fourth Amendment, appellant's humble little red caboose is her home; it is sacrosanct, and it is as worthy of full constitutional protection as is the grandest castle owned by the richest lord of the land. " 'At the very core' of the Fourth Amendment 'stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' " [26] Government intrusion into one's home is presumptively unreasonable

search warrant specified a particular office to be searched, when officers arrived and saw that partition between two offices had been removed for remodeling and "the area appeared to be one large room," drugs found in tool chest within that room, but in area that had been part of separate office, were admissible as being seized within scope of warrant); *see also United States v. Heldt*, 668 F.2d 1238, 1263–66 (D.C.Cir.1981) (when warrant authorized a search of "the suite of offices of Mr. Henning Heldt" it was "logical for officers to assume" that penthouse office "hut," located nine feet across open terrace from primary penthouse office and accessible through French doors was part of that same suite of offices); *United States v. Wright*, 468 F.2d 1184, 1186 (6th Cir.1972) (in prosecution for illegal gambling activities, search warrant for "the premises known as The New Plaza Lounge" covered the attached one-story cement block building described by patrons as "the back room" where the gambling was actually conducted); *United States v. Stefonek*, 179 F.3d 1030, 1032 (7th Cir.1999) (search of business suite number 104 adjacent to suites 101–103 specifically listed in search warrant was authorized, especially since single front door to all four suites was marked "Suite 101" and division of the interior into separately numbered suites was "obscure"); *United States v. Judd*, 687 F.Supp. 1052, 1054, 1059–60 (N.D.Miss.1988) (when search warrant authorized search of premises of "Kilgore Mining Company" to seize bookkeeping and accounting records, officers were justified in following owner out front entrance of company office, through breezeway, and into bookkeeping office), *aff'd*, 889 F.2d 1410 (5th Cir.1989); *People v. Fitzwater*, 260 Cal.App.2d 478, 483, 488, 67 Cal.Rptr. 190 (1968) (warrant that authorized search of warehouse "occupied by Hart Trucking Company, and appurtenances," also authorized search of immobile van on company's block-long lot); *compare United States v. Kaye*, 432 F.2d 647–49 (D.C.Cir.1970) (search warrant to search No. 3618, defendant's business, did not authorize search of 3618½, a second floor residence with separate entrance but part of same building leased in its entirety to defendant; "[t]he store and apartment were separate and distinct; there was no door or direct passage between them"). As the court of appeals in *Kaye* explained:

> The store and apartment were not an integrated unit but were two separate and distinct parts of the building. There was no access to the apartment from the store and no apparent connection between the two. The arrangement is typical of that so frequently existing in urban communities, where living quarters are found over stores. When a store and an apartment are thus arranged a warrant authorizing search of the store—as this warrant did—can hardly be stretched to justify an intrusion into the apartment, regardless of language in the supporting affidavit which might be construed more broadly.

*Id.* at 659; *see also Keiningham v. United States*, 287 F.2d 126, 129 (D.C.Cir.1960) (officers had search warrant for gambling operations at 1106 18th Street, but when they arrived at that row house, four men fled through a "freshly cut door" on porch into adjoining house at 1108; officers followed and found gambling operations there, but their search of adjoining house was unlawful as outside the scope of the search warrant; rejecting government's contention "that 1108 became part of 1106 because of the use to which the two houses were put by appellants" because "[t]he authority to search is limited to the place described in the warrant and does not include additional or different places").

**26.** *Kyllo v. United States*, 533 U.S. 27, 31, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001); *see also United States v. United States District Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972) ("the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed").

under the Fourth Amendment unless the officers have a warrant to enter that home.[27] A warrant to enter a nearby business establishment which is open to the public is not an "Open Sesame" for the home. United States Supreme Court Justice Robert Jackson eloquently articulated this constitutional position more than fifty years ago:

> Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent.[28]

Before we hold that a search warrant for an alleged gambling business open to the public implicitly authorizes the search of the business owner's separate, private home, we should be certain that our understanding of the federal constitution is correct.

Neither the parties nor the court of appeals have cited a single case in which a reviewing court has held that the curtilage of a specifically described business enterprise includes the entirely distinct and separate structure of the home of that business owner. In this case, the red-caboose

home is located approximately thirty feet from the silver-passenger-car business and is "blocked" by a tree.[29] Furthermore, the business, as a gambling establishment, is obviously and explicitly "open" to the public: the red-caboose home is not. Furthermore, there is no evidence that appellant invited business customers into the red caboose for business purposes or that her home was otherwise accessible to those who visited the business. Except for mere physical proximity, there is no evidence in this record to suggest that the red-caboose home was an outbuilding within the curtilage of the silver-passenger-car business.

Based on the evidence in this case, we are unable to conclude that the description of the business enterprise called "Train's" located in the silver passenger railroad car includes, within its business curtilage, appellant's red-caboose home. Furthermore, we believe that a reasonable magistrate or officer, reading the description of "Train's" in the present search warrant/affidavit in a common-sense, practical manner, could not conclude that the warrant also authorized a search of appellant's red caboose home.

The State also argues that the officers could have reasonably believed, when they first arrived, that the red caboose really was a part of the "Train's" business enterprise and not appellant's home.[30] There is, however, no evidence in the record that they did make this honest mistake. Further, such an initial mistake would not permit them to continue searching through the red caboose once they discovered that

**27.** *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

**28.** *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

**29.** On appeal, the parties differ as to the actual distance between the two structures. As neither the parties nor the trial court considered the physical distance between the two railroad cars particularly important to the court's ruling, we do not find this distance determinative either.

**30.** *See Amir*, 45 S.W.3d at 94 ("[a]t the time the search was conducted, was it reasonable for the police to believe that the loft residence area was part of U.S. Apparel's premises?"; concluding that it was) (Keller, P.J., concurring).

they had crossed over the threshold of a private home.[31]

In sum, we conclude that the specific description of the business premises to be searched—the silver railroad passenger car—did not, as a matter of law or logic, implicitly include authorization to search appellant's home—the separate little red caboose.

### B. What is the scope of probable cause for the authorized search as set out in the warrant and accompanying affidavit?

■ In the present case, the affiant exhaustively set out probable cause to believe that the business known as "Train's" was an illegal gambling establishment. The affiant's probable cause section is clear and complete. The search warrant and affidavit sought, and obtained, judicial authority to "search for and seize implements, instruments, instrumentality's [sic], proceeds and evidence used in the commis-

sion of the offenses of Gambling Promotion, Keeping a Gambling Place, Possession of a Gambling Device and Possession of Gambling Paraphernalia."

The affidavit set out probable cause to believe that appellant was a business owner and operator of "Train's" and that police officers would find gambling equipment and paraphernalia, including "electronic slot machines, multi- or eight-liners, [and] specialty gambling devices" at the "Train's" business location. The affiant, an undercover agent, stated that he had entered "Train's" and seen these gambling devices, and that he had talked at length with appellant about the gambling operations at "Train's."

Nowhere, however, did the affiant mention anything about appellant's home, a red caboose, or any gambling paraphernalia or gambling records that might be kept in her home. He entered the public business and gambled; he watched others en-

---

**31.** In *Maryland v. Garrison,* 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987), the Supreme Court explained what a reasonable officer should do when he discovers that he has made an honest mistake in executing an otherwise valid warrant. In *Garrison,* the affiant obtained a warrant for a third floor apartment not knowing that there were really two separate apartments on the third floor. The executing officers mistakenly entered the wrong one.

> If the officers had known, or should have known, that the third floor contained two apartments before they entered the living quarters on the third floor, and thus had been aware of the error in the warrant, they would have been obligated to limit their search to McWebb's apartment. *Moreover, as the officers recognized, they were required to discontinue the search of respondent's apartment as soon as they discovered that there were two separate units on the third floor and therefore were put on notice of the risk that they might be in a unit erroneously included within the terms of the warrant.* The officers' conduct and the limits of the search were based on the information avail-

able as the search proceeded. While the purposes justifying a police search strictly limit the permissible extent of the search, the Court has also recognized the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants.

480 U.S. at 86–87, 107 S.Ct. 1013 (emphasis added). That is, a reasonable and honest mistake in the execution of the warrant is excused if, but only if, the officers do not take advantage of their mistake once they discover it.

In the present case, for example, had the evidence showed that the officers reasonably believed that the red caboose was really a part of the "Train's" business establishment, their honest mistake in crossing over the threshold of appellant's home would not prevent them from making a valid search under authority of a second search warrant if that warrant set out probable cause to search appellant's home. The original honest and reasonable mistake would not, however, allow the officers to continue their unlawful search once they discovered their error.

ter the business and gamble. The affiant noted that he:

> has found through past investigations and observations that the owner/operator of these types of gambling devices will keep documents concerning the machines, documents concerning the amount of money generated by these machines, and other documents related to the operation of the business where the machines are located usually in an office area(s) of these businesses or on person(s) in care, custody and control of said business.

It was certainly reasonable for the affiant to conclude that business records relating to a gambling operation would "usually" be located "in an office area(s) of these businesses," or, perhaps on the person of the business owner.[32] But he said nothing about the possibility or probability of finding such items in the business owner's home.

In sum, the affiant set out a great deal of information about the types of gambling machines and devices used in the public premises of "Train's" and his use of those public premises. No reasonable person reading this long, logical, and carefully drafted affidavit would conclude that appellant had a home nearby or that the affiant had probable cause to believe that she used her home as part of the business enterprise conducted at "Train's."

■ The Fourth Amendment Warrant Clause limits its authorization to the specific areas and things for which there is probable cause to search, thereby ensuring that:

> the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit. Thus, the scope of a lawful search is "defined by the object of the search and the places in which there is probable cause to believe that it may be found. Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase." [33]

In the present case, there is no suggestion (much less facts amounting to probable cause) in the warrant or the affidavit that any of the gambling machines, paraphernalia, or business records that the officers were authorized to seize, would be found in appellant's home. This is like looking for the stolen lawnmower in the upstairs bedroom. The lawnmower could be in the bedroom, but there is no probable cause to believe that it is there.

We agree with Justice Griffith who dissented in the court of appeals:

> Had [the affiant] wanted to search the red caboose, which was established as being known as Appellant's residence, he had only to include sufficient information in his affidavit to establish probable cause to search the Appellant's residence, the red caboose, and, based on

---

**32.** The officers executing the warrant testified that appellant was coming out of the red caboose when they first arrived to arrest her and search the business. Certainly the officers could search appellant's person when they arrested her, but the mere fact that she walked out of the red caboose when they approached does not logically imply that the

red caboose was, therefore, part of the "Train's" business enterprise.

**33.** *Maryland v. Garrison*, 480 U.S. 79 at 84–85, 107 S.Ct. 1013, 94 L.Ed.2d 72 (quoting *United States v. Ross*, 456 U.S. 798, 824, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982)) (footnote omitted).

that probable cause affidavit, to obtain a search warrant for the red caboose, duly signed by the reviewing magistrate.[34]

Like Justice Griffith, we conclude that the trial court should have stayed with its original, correct ruling excluding the evidence obtained from this unlawful search of appellant's home. We therefore reverse the decision of the court of appeals and remand the case to that court for further proceedings consistent with this opinion.

KEASLER, J., filed a dissenting opinion in which KELLER, P.J., and HERVEY, J., joined.

KEASLER, J., filed a dissenting opinion in which KELLER, P.J., and HERVEY, J., join.

I respectfully dissent. The majority's opinion focuses solely on the fact that the red caboose, which Long used as a residence, was not specifically described in the affidavit. But the majority turns a blind eye to our own jurisprudence and that of federal law that the description of a structure in an affidavit does not limit a search only to that structure when the "place and premises" language is used. We recognized that distinction in *Comeaux v. State*, where we said that when an affidavit uses the language "place and premises," it may authorize a search of other buildings on the property even if the affidavit specifically describes the property to be searched.[1] Other courts hold that when a warrant contains the "premises" language followed by a physical description of the structure

to be searched, the specific reference is generally found to be for the purpose of more fully identifying those premises, not for the purpose of restricting the area to be searched.[2] And the Supreme Court of the United States has held that "a lawful search of a fixed premises generally extends to the entire area in which the object of the search may be found."[3]

Here, the warrant incorporated the affidavit by reference. While the affidavit described only the silver passenger train car, it also repeatedly called to search the "place and premises." And the items seized from the red caboose—the keys to the eight-liner machines, Wal–Mart gift certificates, cash, and bank records—were items listed in the affidavit as things that would be found in the place and premises to be searched. I agree with the Court of Appeals that the "place and premises" language in the affidavit included the red caboose in the scope of the search.

The majority notes that "when courts examine the description of the place to be searched to determine the warrant's scope, they follow a certain common sense and practical approach, not a 'Procrustean' or overly technical one."[4] But the majority's opinion is a hypertechnical reading of the affidavit and search warrant. It limits searches to specific wording in the affidavit rather than considering the affidavit as a whole.

The majority concludes that the search of the red caboose exceeded the scope of the warrant because it was Long's resi-

34. *Long*, 108 S.W.3d at 430 (Griffith, J., dissenting).

1. *Comeaux v. State*, 118 Tex.Crim. 223, 228, 42 S.W.2d 255, 258 (1931).

2. *U.S. v. Griffin*, 827 F.2d 1108, 1114 (7th Cir.1987) (citing *U.S. v. Palmisano*, 386 F.Supp. 599, 599–600 (E.D.Wis.1974)); *see also U.S. v. Bulgatz*, 693 F.2d 728, 730 (8th Cir.1982); *U.S. v. Freeman*, 685 F.2d 942, 955 (5th Cir.1982); *U.S. v. Napoli*, 530 F.2d 1198, 1200 (5th Cir.1976); *U.S. v. Long*, 449 F.2d 288, 294 (8th Cir.1971); *U.S. v. Pointer*, 348 F.Supp. 600, 603–04 (W.D.Mo.1972).

3. *U.S. v. Ross*, 456 U.S. 798, 820, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

4. *Ante*, op. at 448.

dence. While a home is usually considered a constitutionally protected area,[5] this concept does not serve as a "talismanic solution to every Fourth Amendment problem."[6] In *Amir v. State*, we found that where a warrant authorized a search of a business premises, it did not exceed the scope of the warrant to search a residence contained within those premises.[7] In *Amir*, the police obtained a warrant to search a business called U.S. Apparel located at 5627 Star Lane, Suite A, Houston, Harris County, Texas.[8] The defendant owned U.S. Apparel, and his residence was a room located on the second floor of the building.[9] He had marked the door of that room with a different address.[10] But the address number the defendant marked on his door actually belonged to an adjoining business that the defendant did not own, and the defendant's driver's license reflected that his home address was the same as the address for U.S. Apparel.[11] We concluded that because the warrant named a business and a particular address, the defendant's residence located inside the business was a part of the place to be searched, and thus a search of the residence did not exceed the scope of the warrant.[12]

Although the residence in *Amir* was physically located inside, and attached to, the business premises, and while here the red caboose was a separate structure, this does not change the analysis. As Judge Keller noted in her concurrence in *Amir*, "courts have held that a search warrant covers structures not described in the warrant if the structures appear to be a part of, or appurtenant to, the property described in the warrant."[13] Here, the affidavit called for, and the warrant authorized, a search of the "suspected place and premises" of an "unnamed business known as 'Train's', 1075 Pritchett Lane, Seven Points, Henderson County, Texas...." From the record, the red caboose appeared to be part of or appurtenant to the business premises of Train's. There was nothing to indicate that the red caboose was a residence, and nothing in the record shows that the officers executing the warrant knew it was a residence, despite the Court of Appeals' dissent to the contrary. While the investigator who prepared the affidavit testified that he knew that Long used the red caboose as her living quarters, nothing in the record shows that the officers executing the warrant had such knowledge. And unlike *Amir*, the red caboose was not marked with a separate exterior address. Further, the record shows that the officers searched only the train cars on the property; the officers did not search a travel trailer on the property that appeared to be a residence but not part of Train's. I do not believe we should be "prepared to hold that a warrant to search a business automatically encom-

---

5. *See Katz v. U.S.*, 389 U.S. 347, 351–52, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

6. *Id.* at 352 n. 9, 88 S.Ct. 507.

7. *Amir v. State*, 45 S.W.3d 88, 90–91 (Tex. Crim.App.2001).

8. *Id.* at 89.

9. *Id.*

10. *Id.*

11. *Id.*

12. *Id.* at 91.

13. *Id.* at 98 (Keller, P.J., concurring) (citing *U.S. v. Wright*, 468 F.2d 1184, 1185 (6th Cir. 1972), cert. denied, 412 U.S. 938, 93 S.Ct. 2771, 37 L.Ed.2d 397 (1973); *Commonwealth v. Scala*, 380 Mass. 500, 404 N.E.2d 83, 89 (1980); *State v. Cote*, 126 N.H. 514, 493 A.2d 1170, 1176 (1985); *Rainey v. State*, 74 Wis.2d 189, 246 N.W.2d 529, 533–36 (1976); *Sowers v. State*, 724 N.E.2d 588, 590–91 (Ind.2000)).

passes a residence ... owned by the same person"[14] located on the same property as the business. But because in this case, the red caboose appeared to be part of the place and premises to be searched, the officers did not exceed the scope of the warrant in searching the red caboose.

The majority states that there was no evidence that the officers executing the warrant made an honest mistake by searching Long's residence. But that is not the standard. The standard is whether, under the circumstances, the officers could have reasonably perceived the red caboose as part of the place and premises of Train's.[15] The objective facts available to the officers executing the warrant suggested no distinction between the red caboose and the business premises of Train's.[16] So under the majority opinion, a police officer could not conduct a reasonable search of a residence.

The majority also states that "a warrant to enter a nearby business establishment which is open to the public is not an 'Open Sesame' for the home."[17] I agree that even though Long's residence was only a "humble little red caboose" that "it is as worthy of full constitutional protection as is the grandest castle owned by the richest lord of the land."[18] But just as in *Amir*, Long's home appeared to be part of the business premises. There was no indication that the red caboose was Long's home. There was only one mailbox address for the entire premises known as Train's, which also included Long's humble abode. Long's residence appeared to be part of the business premises, and so it was not outside of the scope of the warrant.

## Conclusion

I believe that the Court of Appeals did not err in finding that the trial court did not abuse its discretion in admitting evidence seized from the red caboose. Because the majority finds differently, I dissent.

14. *Id.* at 96.

15. *See Maryland v. Garrison,* 480 U.S. 79, 86–88, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987).

