

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1070-19

**ROBERT LEE CRIDER, JR., Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### KERR COUNTY

**WALKER, J., filed a dissenting opinion.**

## DISSENTING OPINION

Appellant, Robert Lee Crider, Jr.'s, blood was drawn pursuant to a search warrant as part of a DWI investigation, and the blood was later tested for blood alcohol concentration. While the search warrant expressly authorized drawing of the blood, the search warrant did not authorize testing of that blood. The Court today determines that testing was implicitly authorized by the warrant because the affidavit attached to the warrant, which stated facts providing probable cause to draw the blood, also stated facts providing probable cause to test the blood. While I agree that there was probable cause to test the blood, I disagree that the mere presence of probable cause means the warrant

authorized testing. Because I would hold that the warrant in Appellant's case did not even implicitly authorize testing, I respectfully dissent.

## I — Particularity

The Fourth Amendment prohibits the issuance of warrants unless there is probable cause and unless the warrant particularly describes the place to be searched and the persons or things to be seized. U.S. CONST. amend. IV. A search conducted with a warrant that fails to comply with the Fourth Amendment's particularity requirement is unconstitutional. *Massachusetts v. Sheppard*, 468 U.S. 981, 988 n.5 (1984).

The particularity requirement "assures  the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the *limits of his powers to search*." *Bonds v. State*, 403 S.W.3d 867, 874–75 (Tex. Crim. App. 2013) (emphasis added). The constitutional objectives of the particularity requirement include:

> 1) ensuring that the officer searches the right place; 2) confirming that probable cause is, in fact, established for the place described in the warrant; 3) *limiting the officer's discretion and narrowing the scope of his search*; 4) minimizing the danger of mistakenly searching the person or property of an innocent bystander or property owner; and 5) informing the owner of the officer's authority to search that specific location.

*Id.* (citing *Long v. State*, 132 S.W.3d 443, 447 (Tex. Crim. App. 2004)) (emphasis added). "[W]hen courts examine the description of the place to be searched to determine the warrant's scope, they follow a common sense and practical approach, not a 'Procrustean' or overly technical one." *Long*, 132 S.W.3d at 448.

*Long* is a good example of the issues at play in this case. The search warrant in *Long*, incorporating the affidavit by reference, gave a "remarkably specific" and "superb" description of

the premises (a silver railroad car) to be searched, but when executing the warrant the police searched not only the silver railroad car but also another train car in the same vicinity as well as Appellant's home, which was a nearby red caboose. *Id.* at 445. Long challenged the search of the red caboose as going beyond the scope authorized by the warrant. *Id.* at 445–46. We concluded that the warrant, specifically describing the silver railroad car to be searched, did not implicitly authorize a search of the separate little red caboose. *Id.* at 452. This conclusion had two bases. First, we were unwilling to find the little red caboose as included within the curtilage of the business described by the warrant and affidavit due to the fact that the caboose was Long's home. *Id.* at 450–51. "Furthermore," and of particular importance to the case before the Court today, "we believe[d] that a reasonable magistrate or officer, reading the description of [the premises] in the . . . search warrant/affidavit in a common-sense, practical manner, could not conclude that the warrant also authorized a search of [Long's] red caboose home." *Id.* at 451. A reading of the warrant in Appellant's case inexorably leads to a similar conclusion.

## II — The Warrant in This Case

The warrant in this case provides:

> WHEREAS an affidavit in writing under oath, has been made before me by <u>Kienan Goodnight</u> (officer who signed search warrant affidavit), which said affidavit is attached hereto and expressly incorporated herein and made a part hereof, and said affidavit and the attachments thereto have stated facts and information in my opinion sufficient to establish probable cause for issuance of this warrant for seizure of BLOOD from the person of <u>Robert Lee Crider Jr</u> (suspected party) and to CARRY the said person to a physician, registered nurse, or medical laboratory technician skilled in the taking of blood from the human body and the said physician, registered nurse, or medical laboratory technician shall take sample of the BLOOD from the person of the said <u>Robert Lee Crider Jr</u> (suspected party) in the presence of a law enforcement officer and deliver the said samples to the said law enforcement officer.

By its terms, the warrant states that the magistrate has the opinion that the affidavit states facts

sufficient to establish probable cause for the seizure of Appellant's blood from his person. The warrant then does three things: (1) it authorizes the carrying of Appellant to a physician, registered nurse, or a medical laboratory technician who is skilled in the taking of blood from a human body; (2) it directs that physician, registered nurse, or medical laboratory technician to take a sample of blood from Appellant in the presence of a law enforcement officer; and (3) it directs that physician, registered nurse, or medical laboratory technician to deliver the samples to the law enforcement officer. The warrant does not say anything about testing the blood. The warrant could have directed the physician, registered nurse, or medical laboratory technician to test the blood and thereafter deliver the results of that test to the law enforcement officer. Or the warrant could have instructed the law enforcement officer to take delivery of the drawn blood and thereafter bring it to a forensic laboratory for testing. The warrant, however, did neither of these things.

But the Court reads testing into the warrant anyway. This is so, according to the Court, because the same facts establishing probable cause for the drawing of Appellant's blood are also the same facts establishing probable cause for the testing of Appellant's blood.[1] I agree that the facts in the affidavit show probable cause to support both drawing Appellant's blood as well as testing Appellant's blood. But the question is not whether there was probable cause for the draw or the test. The question is whether the warrant authorized the test. It does not.

The concurring opinion likens the situation before us to *Faulkner v. State*, 537 S.W.2d 742 (Tex. Crim. App. 1976). In *Faulkner*, we upheld the seizure of contraband where the warrant did not particularly describe the contraband to be seized. *Id.* at 744. Instead, the warrant said, in pertinent

---

[1] Similarly, the concurring opinion believes that "it is better to say that the probable-cause determination that justified the seizure of blood, at least in this case, necessarily constituted a determination of probable cause to also search it." (concurring opinion of Newell, J., at 3).

part:

> Whereas, the affiant whose name appear (sic) on the affidavit attached hereto is a Peace Officer under the laws of Texas, and do heretofore this day subscribe and swear to said affidavit before me (which said affidavit is here now made part hereof for all purposes), and whereas I find that the verified facts stated by the affiant in said affidavit show that the affiant has probable cause for the belief that he expresses therein and establish existence of proper grounds for issuance of this warrant; now, therefore, you are commanded to enter the suspected place described in said affidavit and to seize same and bring it before me and to arrest and bring before me each suspected party named in said affidavit

*Id.* at 743. The concurring opinion argues that the rationale of *Faulkner* applies equally to Appellant's case, and, because the warrants in both cases incorporate their respective affidavits, the scope of the warrant in Appellant's case should be judged against both the warrant and the affidavit. But the *Faulkner* warrant incorporates the affidavit where it matters. The warrant in Appellant's case does not.

The *Faulkner* warrant's incorporation of the affidavit is part and parcel of the command to the executing officers: "now, therefore, you are commanded to enter the suspected place described in said affidavit and to seize same and bring it before me." *Id.* at 743. In contrast, the warrant in Appellant's case does not incorporate the affidavit in the command. Instead, the affidavit is incorporated in the first half of the warrant, where the affidavit does little more than provide background information for the magistrate's finding of probable cause. As such, the affidavit is part of the "WHEREAS." I would agree with the concurrence if the affidavit was incorporated into the actual command of the warrant, as it was in *Faulkner*:

> WHEREAS an affidavit in writing under oath, has been made before me by <u>Kienan Goodnight</u> (officer who signed search warrant affidavit), which said affidavit is attached hereto and expressly incorporated herein and made a part hereof, and said affidavit and the attachments thereto have stated facts and information in my opinion sufficient to establish probable cause for issuance of this warrant; now, therefore, you

> are commanded to search for and seize the evidence described in the said affidavit from the person of <u>Robert Lee Crider Jr</u> (suspected party).

Instead, the warrant in the case before us gave specific instructions: (1) it tells the officer to carry Appellant to a physician, registered nurse, or a medical laboratory technician who is skilled in the taking of blood from a human body; (2) it directs that physician, registered nurse, or medical laboratory technician to take a sample of blood from Appellant in the presence of a law enforcement officer; and (3) it directs that physician, registered nurse, or medical laboratory technician to deliver the samples to the law enforcement officer. The warrant did not incorporate the affidavit into its command, and *Faulkner* is not on point.

This conclusion is bolstered by the fact that the *Faulkner* warrant says "you are commanded to enter the suspected place described in said affidavit and to seize same *and bring it before me . . . .*" *Id*. at 743 (emphasis added). The warrant's command to the executing officers to "bring it before me" means that they were to go in, search for "it," and bring "it" back to the magistrate. This command would be impossible if the warrant only commanded seizure of the place. The police in *Faulkner*, unlike the officer in Appellant's case, had authority to do what they did.

One could argue that "common sense" would imply that a warrant authorizing a blood draw in a DWI case also authorizes testing the blood for BAC. But the "common sense" we spoke of in *Long* was related to the reading of the words actually used by the warrant. If a warrant is poorly worded or confusing, courts should not fault the police executing the warrant for going outside the bounds of the warrant's authority. *See Long*, 132 S.W.3d at 451 ("we believe that *a reasonable magistrate or officer, reading the description* of [the premises] in the . . . search warrant/affidavit in a common-sense, practical manner, could not conclude that the warrant also authorized a search

of [Long's] red caboose home.") (emphasis added). We did not, in *Long*, use the phrase "common sense" to mean that the clear words used by the warrant can be overridden by a reviewing court's opinion of what the warrant should have said. Unless someone can point to me how the actual words in the warrant:

> CARRY the said person to a physician, registered nurse, or medical laboratory technician skilled in the taking of blood from the human body and the said physician, registered nurse, or medical laboratory technician shall take sample of the BLOOD from the person of the said <u>Robert Lee Crider Jr</u> (suspected party) in the presence of a law enforcement officer and deliver the said samples to the said law enforcement officer.

are somehow ambiguous, such that *the officers reading the warrant* and then executing the warrant could mistakenly read these words as also authorizing testing, the warrant should be read according to its own terms.

A warrant that expressly directs for: (1) Appellant to be carried to a physician, registered nurse, or medical laboratory technician; (2) that physician, registered nurse, or medical laboratory technician to take a sample of Appellant's blood in the presence of a law enforcement officer; and (3) then deliver the sample to the law enforcement officer does not implicitly direct the law enforcement officer to take the sample to a laboratory for testing. It is not "'Procrustean' or overly technical" to read the actual words used in the warrant as authorizing only what it says and no more. *See Long*, 132 S.W.3d at 448. The words are clear. *Id.* I decline to join the Court's overly generous reading of the warrant, and I respectfully dissent.

Filed: September 16, 2020
Publish