Gary Lynn KINSEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 6–81–018–CR.

Court of Appeals of Texas, Texarkana.

June 22, 1982.

Rehearing Denied Aug. 24, 1982.

James P. Finstrom, Dallas, for appellant.

Henry Wade, Dist. Atty., Karen Chilton Beverly, Asst. Dist. Atty., Dallas, for appellee.

CORNELIUS, Chief Justice.

Gary Lynn Kinsey appeals his conviction for credit card abuse. Trial was to a jury which set punishment at 10 years confinement, enhanced by a prior conviction. The appeal contends that Kinsey's identification as the offender was impermissibly influenced by a prior illegal arrest, and that various items linking him to the offense were inadmissible because they were produced by the illegal arrest and also improperly connected him to extraneous offenses. We overrule these contentions and affirm the judgment.

Kinsey was accused of unlawfully using a VISA credit card belonging to Fred Michaels. According to the State's evidence, Michaels' truck was stolen on November 15, 1978, along with his wallet, VISA credit card, checks from his business, and some electronic equipment. On November 30th Kinsey, accompanied by a female companion, purchased a ring at Expo Leather, paid for it with Michaels' VISA card, and signed Michaels' name to the charge slip. Kimberly and Tammy Williams, manager and clerk at the store, identified Kinsey at trial as the man who used the card and signed the slip. Kinsey's defense was that he was in Houston when the card was used.

In Ground of Error One Kinsey argues that his identification which led to his prosecution in this case was the product of two prior illegal searches and should have been suppressed. A hearing on a motion to

suppress the evidence revealed the following facts.

An Athens pharmacist called a local deputy sheriff and informed him that a young, blond female had attempted to obtain controlled drugs by using a forged prescription. He gave a description of her and of the van in which she was riding. A few minutes later, officers in Athens saw a van matching the description, being driven by an unidentified male with a young blond female and Appellant Kinsey as passengers. On searching the occupants, the officers found Kinsey with two prescriptions for the same drugs the woman had attempted to obtain from the druggist. Kinsey also had a driver's license with his picture on it but bearing the name "Larry Mills." Photographs were taken of Kinsey and the other occupants. A search warrant was then issued and the van was searched.

The Athens police received information from authorities in Mesquite that Kinsey was manufacturing driver's licenses in Dallas. Athens Police Officer Burton relayed this information to Dallas law enforcement personnel on January 26, 1979, and he went to Dallas three days later. While he was there his partner called from Athens to advise that he had overheard the van's driver ask his (the driver's) mother to retrieve certain items from a house at Clarendon and Polk Streets. Also while Burton was in Dallas he visited with Dallas Sheriff's Deputy Howard Taylor. Taylor testified that on that same day he received information from a confidential informant that "Kinsey" residing at the west side of a duplex at 1103 Clarendon was in possession of the drug Preludin.

A warrant was issued on January 29, 1979, for the search of the Clarendon property and outbuildings. When the search team arrived they asked the persons occupying the west side of the duplex about a U-Haul van parked in the rear. The occupants stated they did not know who owned the van but told the officers to go ahead and search it. Inside the van, the officers found a number of checks belonging to Fred Michaels and a number of counterfeit driver's licenses. They also found narcotics.

Sandra Tucker, Gary Evans, and defendant's brother, Ronnie Kinsey, were arrested. Taylor testified that after the search he learned that his informant was referring to Kinsey's brother, Ronnie, but he also testified that, at the time of the search, he was pursuing a continuing investigation of Gary Kinsey.

During the investigation of the use of Michaels' credit card at the Expo Leather store, the Williams sisters picked Kinsey out of a photographic lineup that included his picture taken after the January 25, 1979, arrest in Athens. Testimony concerning the lineup was presented at trial without objection. Kinsey posits that the arrest and search in Athens were illegal, and therefore, his identification and subsequent prosecution in this case are "fruit of the poisonous tree."

The warrantless arrest in Athens, to be valid, must have been justified by probable cause and exigent circumstances. *Reed v. State,* 522 S.W.2d 916 (Tex.Cr.App.1975); *Washington v. State,* 518 S.W.2d 240 (Tex. Cr.App.1975); *Hooper v. State,* 516 S.W.2d 941 (Tex.Cr.App.1974). At the time of this arrest, the Texas Controlled Substance Act provided that obtaining certain narcotics by a forged prescription was unlawful. Tex. Rev.Civ.Stat.Ann. art. 4476–15, § 4.09(a)(3) (Vernon Supp. 1982). Here, however, the drug was not obtained. There was only an attempt. Since the Controlled Substances Act contains no general criminal attempt provision, attempting to acquire and obtain a controlled substance by forgery is not an offense. *Ex Parte Brantley,* 574 S.W.2d 567 (Tex.Cr.App.1978); *Moore v. State,* 545 S.W.2d 140 (Tex.Cr.App.1976). Because there was no evidence that Kinsey or his companion had committed an offense, there was not sufficient probable cause for his arrest and search in Athens.

The State argues that possession of a forged prescription is an offense under Tex. Penal Code Ann. § 32.21 (Vernon 1974), the general forgery provision. However, Section 32.21 requires that a person must intend "to defraud or harm another" by his

action. Tex. Penal Code Ann. § 32.21(b) (Vernon 1974). There is no evidence of intent to defraud or harm in this case.

Ordinarily, an identification resulting from an illegal arrest is inadmissible. 3 LaFave, Search and Seizure § 11.4(g)(1978). But as Professor LaFave has pointed out, that result does not follow in all cases. Each case is to be judged on its own merits by an analysis employing the elements used by the United States Supreme Court in assaying the connection between an illegal arrest and a confession. The elements are (1) temporal proximity, (2) presence of intervening circumstances, and, particularly, (3) the purpose and flagrency of the official misconduct. *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). We find that when the third element is applied here, any taint associated with the photographic lineup identification disappears because the purpose of the arrest in Athens was not to take Kinsey's picture for a photographic lineup. See *State v. Thomas,* 491 S.W.2d 328 (Mo.1973); *People v. McInnis,* 6 Cal.3d 821, 494 P.2d 690 (1972). In addition, there were sufficient intervening circumstances and independent bases for the identification to render the connection with the illegal arrest too attenuated to require exclusion. Moreover, defendant did not object to testimony concerning his identification in the photographic lineup, and the in-court identification was of sufficient independent origin to be admissible in any event.

■ In Ground Two Kinsey argues that the trial court erred in admitting into evidence checks belonging to Fred Michaels because they were produced by an illegal search. It is unquestioned that the Dallas Sheriff's Department had been contacted by the Athens police about Kinsey before the search warrant was issued. There is, however, ample evidence in the record to prove that the information leading to the search was obtained independently of the information from Athens. Officer Taylor testified that he had been conducting an on-going investigation of Kinsey, and that within twenty-four hours of the search he received word from a confidential informant that "Kinsey" at the Clarendon address had been seen with illicit drugs. The exclusionary rule has no application when officers learn of evidence from a source independent of the tainted source. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *State v. O'Bremski,* 70 Wash.2d 425, 423 P.2d 530 (1967).

■ It is also urged that the Dallas search exceeded the warrant's scope because as the informant only gave information concerning Kinsey's possession of a drug in the duplex, there was no probable cause for a warrant authorizing the search of anything more than the interior of the house. We conclude that the information obtained by the police constituted sufficient probable cause to justify a warrant for the search of automobiles as well as the interior of the residence itself. We also reject the contention that the search of the van was improper because the warrant authorized the search of automobiles and not vans. "Automobile" is defined as "a usu[ally] four-wheeled automotive vehicle designed for passenger transportation and commonly propelled by an internal-combustion engine using a volatile fuel." Webster's New Collegiate Dictionary (1975). The van involved here was an automobile within the meaning of the warrant.

■ The point is raised that the warrant was broader than the affidavit supporting it. The description in the affidavit of the place to be searched limits and controls the description in the search warrant. *Riojas v. State,* 530 S.W.2d 298 (Tex.Cr.App.1975). In this case the warrant authorized the search of "the suspected place and premises described in [the supporting] Affidavit." The authorization here was clearly within the rule of *Riojas.* See also *Cantu v. State,* 557 S.W.2d 107 (Tex.Cr.App.1977); *Robie v. State,* 36 S.W.2d 175 (Tex.Cr.App.1931); *McTyre v. State,* 19 S.W.2d 49 (Tex.Cr.App. 1929).

■ Kinsey also asserts there was no probable cause to search the van because there was no showing that it was linked to

his half of the duplex rather than the other half. If that assertion is true, it does not invalidate the search, for in that situation Kinsey wholly failed to carry his burden of showing that he had a reasonable expectation of privacy in the van. Thus, he would have no standing to challenge the search. *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

Grounds three and four contend that the trial court erred when it admitted into evidence a number of checks taken from Fred Michaels at the same time his VISA card was stolen, and a driver's license board, apparently used to make forged driver's licenses, because they constituted evidence of offenses other than the one for which Kinsey was being tried.

Where an offense is one continuous transaction, or where another offense is part of the case on trial or is closely interwoven with it, proof of facts relating to the other offense is part of the res gestae of the offense charged. *Ward v. State,* 581 S.W.2d 164 (Tex.Cr.App.1979) (en banc). The checks were therefore admissible as part of the res gestae of the theft of the credit card. They were also admissible to identify Kinsey once he put his identification in issue by raising the defense of alibi. Extraneous offenses are admissible to show identity once the issue of identity is raised by appellant's denial of the offense and his defense of alibi. *Frison v. State,* 473 S.W.2d 479 (Tex.Cr.App.1971); *Woodard v. State,* 470 S.W.2d 650 (Tex.Cr.App.1971); *Owens v. State,* 450 S.W.2d 324 (Tex.Cr. App.1969); 23 Tex.Jur.2d *Evidence* § 196 (1961).

The driver's license board was likewise admissible to show identification and refute the alibi defense. Some of the stolen checks were made out to "Larry Mills." Kinsey possessed a forged driver's license bearing his picture and the name "Larry Mills". The board, in conjunction with the checks and counterfeit license, identifies Kinsey as the thief of the checks which were taken at the same time the credit card

was stolen. The board was also admissible to rebut Kinsey's testimony at trial that he obtained the counterfeit license from a black man in Dallas.

All of appellant's grounds of error are overruled, and the judgment is affirmed.