

## In The
## Court of Appeals
## Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00076-CR
_____

DEDRICK DEAN MATTHEWS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 114th Judicial District Court
Smith County, Texas
Trial Court No. 114-0921-07

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Dedrick Dean Matthews was convicted by a Smith County jury of felony bail jumping.[1]  *See* TEX. PENAL CODE ANN. § 38.10(a), (e) (Vernon 2003).  Matthews did not elect to have the jury set punishment and, having announced "true" to a prior felony conviction, Matthews's sentence was enhanced from a third-degree felony to a second-degree felony.  *See* TEX. PENAL CODE ANN. § 12.42(a)(3) (Vernon Supp. 2008).  Matthews was assessed a sentence of eighteen years' confinement with the Texas Department of Criminal Justice–Correctional Institutions Division and a fine of $5,000.00.

Matthews has appealed, raising two points of error:  (1) he complains of error in having allowed evidence of an extraneous offense to be admitted, and (2) he maintains that it was error for the trial court to have refused to allow his court-appointed attorney to withdraw.

**EXTRANEOUS OFFENSE**

Matthews, in Texas as a New Orleans evacuee after the Katrina hurricane, had been charged with the felony offense of felon in possession of a firearm on November 9, 2006, and was released on an instanter bond on November 19, 2006.  When Matthews's case was called for trial on April 5, 2007, he failed to appear.

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005).  We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

Matthews urges that the admission of evidence concerning the original charge (i.e., the felon in possession of a firearm) was inadmissible because of the prejudicial effect the charge had upon the jury, citing Rule 403 of the Texas Rules of Evidence, which states that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence. TEX. R. EVID. 403.

Although Matthews acknowledges that the weighing of deleterious effects of allowing such relevant evidence against the probative value of it is a matter which lies in the discretion of the trial court, he further correctly observes that the courts of appeals may reverse a trial court's determination if an abuse of discretion is shown, citing *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). The *Powell* case which Matthews cites is also illustrative of the standard of review to be applied: an appellate court is to "uphold a trial court's admissibility decision when that decision is within the zone of reasonable disagreement." *Id.*

Matthews raises this complaint for the first time on appeal. No objection regarding this was lodged at the time of trial or in a hearing on a motion for new trial. In order to preserve a complaint for appellate review, the record must reflect that the complaint was brought to the attention of a trial court in accord with applicable rules by a timely request, objection, or motion which specifically sets out the nature of the complaint in a sufficiently comprehensible manner that it informs the trial court of its nature and basis and obtained either an adverse ruling or a refusal to rule. TEX. R. APP.

3

P. 33.1(a). Matthews failed to do so and has, therefore, failed to preserve any alleged error for appeal.

Even if he had, the argument which Matthews advances misses the point. The offense with which Matthews was charged is based upon the initial premise that he had been "lawfully released from custody, with or without bail, on condition that he subsequently appear." *See* TEX. PENAL CODE ANN. § 38.10(a). Had he not been charged with a crime, he could not have been lawfully in custody at the outset. Therefore, in order for the State to prove that he had been lawfully discharged, it must first prove that he was lawfully in custody. Without offering that evidence, the State could not prove the offense with which he was charged.

Subsections (d), (e), and (f) of Article 38.10 define the level of the offense. Unless subsections (e) or (f) apply, the failure to appear is a class A misdemeanor; subsection (e) lowers the level of the crime to a class C misdemeanor if the underlying offense for which the accused did not appear is punishable by a fine only, and subsection (f) raises the offense to a felony if the underlying offense was a felony. Accordingly, one of the elements which the State had to prove in Matthews's case was that the offense for which Matthews failed to appear was a felony offense. Had the State not proven the level of the underlying offense (i.e., the offense with which Matthews had been charged when released and subsequently failed to appear), an integral part of the offense for which Matthews was then on trial would have remained unproven.

4

In other words, had the State shown that Matthews failed to appear in court on April 5, 2007, without also showing that he had an obligation to appear, it would have not proven that an offense occurred. If the State had not shown that the original crime with which he was charged was a felony, it would have failed to prove the level of the offense he was alleged to have committed.

"[E]vidence of extraneous offenses that are indivisibly connected to the charged offense and necessary to the State's case in proving the charged offense may be admissible as relevant evidence to explain the context of the offense for which the defendant is on trial." *Lockhart v. State*, 847 S.W.2d 568, 571 (Tex. Crim. App. 1992). "Moreover, proof of another offense is admissible if it is a part of the offense on trial." *Euziere v. State*, 648 S.W.2d 700, 703 (Tex. Crim. App. 1983) (citing *Kinsey v. State*, 639 S.W.2d 486, 490 (Tex. Crim. App. 1982)).

Because no error was preserved for appeal and because it was not error to have admitted evidence of the underlying offense, we overrule this point of error.

**REFUSAL TO ALLOW ATTORNEY TO WITHDRAW**

Matthews was generally dissatisfied with almost everything which occurred before and during his trial.[2]

The case was originally set for trial February 13, 2008. At that time, Matthews's court-appointed attorney filed an application to withdraw from the case, a move which Matthews

_____

[2]In addition to his displeasure with the conduct of his attorney, Matthews refused to allow his fingerprints to be duplicated at trial, resulting in a struggle which broke three legs off a table in a jury room. His continued disruptions became so onerous during the penalty phase that the trial court ordered him bound and gagged for a period of time.

enthusiastically endorsed. At that time, Matthews's attorney told the trial court, "[M]y relationship with Mr. Matthews has become extremely antagonistic, and I don't believe, in all honesty, that I could represent him effectively." After the trial court refused the request to withdraw, Matthews emphasized that he agreed with the application to withdraw, stating,

> Your Honor, I was going to come in here and say the same thing under the Failure to Defense Act (sic). He never came to see me or nothing. Every time he come [sic] in here, you asked him questions, he had excuses, you know what I'm saying? I asked him to come see me. Once he made an excuse, like twice. Then I asked him to come see me, because I wanted to file some motions. He never came to see me. Last night he came to see me, threatened me with what the district attorney presented to him and told me that the district attorney said that I might not be guilty of the gunshots, but they'll convict me of the other charge.

During the penalty phase of the trial, Matthews complained that his counsel had not filed motions that he wanted to have filed. Also, after the jury had found Matthews guilty and had been dismissed, Matthews then said that his counsel had not properly informed him of his ability to have the jury assess punishment. On a number of occasions, Matthews complained that his attorney had not communicated with him before trial. There is further evidence in the record of the continued disagreement between Matthews and his attorney; against the advice of his attorney, Matthews elected to take the stand and testify during the penalty phase of the trial.

Matthews's trial counsel, in requesting that he be allowed to withdraw, indicated to the court that his relationship with Matthews had become "extremely antagonistic" and that he believed that the conflict had impaired his ability to represent Matthews effectively.

6

The trial court has discretion to determine whether counsel should be allowed to withdraw from a case. *King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000). Personality conflicts and disagreements concerning trial strategy are typically not valid grounds for withdrawal. *Solis v. State*, 792 S.W.2d 95, 100 (Tex. Crim. App. 1990) ("Appointment of new counsel is a matter solely within the discretion of the trial court."). Even in a situation wherein the defendant had smashed a water pitcher into the face of his appointed counsel during a prior trial, the courts have determined that a personality conflict did not dictate that the attorney be allowed to withdraw. *Culverhouse v. State*, 755 S.W.2d 856 (Tex. Crim. App. 1988).

Even though Matthews expressed displeasure in the quality and quantity of legal representation he was afforded, his trial counsel explained in detail that he had visited with Matthews before trial sufficiently to advise him and prepare for trial. Counsel also pointed out that he had told Matthews that he believed that the court would likely assess a lesser penalty than a jury; upon hearing that, Matthews had agreed to place the issue of punishment before the court. Although Matthews mentioned motions which he wanted to have filed, he did not specify the nature of these motions or what results he was attempting to achieve in filing them. The record reveals that Matthews's trial counsel filed a motion for continuance and a motion to quash the indictment and participated in two hearings on those motions.

Although it was not listed as a separate point of error, Matthews maintains within this point that because of the circumstances, the refusal of the trial court to allow his counsel to withdraw

operated to deny Matthews an effective attorney-client relationship, denying him his right to due process of law.[3]  Other than this broad and imprecise claim of ineffective counsel, Matthews cites no resulting harm for the trial court's refusal to allow counsel to withdraw and none can be perceived.

The standard of testing claims of ineffective assistance of counsel is set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail on this claim, an appellant must prove by a preponderance of the evidence (1) that his or her counsel's representation fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced the defense.  *Id.* at 689; *Rosales v. State*, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999).  To meet this burden, the appellant must prove that the attorney's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for the attorney's deficiency, the result of the trial would have been different.  *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000).  Under this standard, a claimant must prove that counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.  *Strickland*, 466 U.S. at 686.

Matthews's claim of ineffective counsel is a general one, citing specific complaints of things with which he was dissatisfied, those being that (1) he wanted motions filed and (2) there was a lack of effective communication.  However, a motion to quash the indictment was filed and Matthews

---

[3]Although this renders this point of error multifarious, since there is otherwise no argument that the refusal to allow the attorney to withdraw caused any harm, we will nevertheless address this issue in the interest of justice.

was nonspecific regarding any other motions which he might have believed would have bettered his cause; Matthews's trial counsel related to the court that there had been sufficient opportunities for communication for him to prepare for trial.

The burden is on the defendant to prove ineffective assistance of counsel by a preponderance of the evidence from allegations firmly founded on the record. *Rodriguez v. State*, 899 S.W.2d 658, 665 (Tex. Crim. App. 1995). Matthews offers no such proof and the record demonstrates that his counsel provided good representation under difficult circumstances, considering the demeanor which Matthews demonstrated.

Even if it had been error for the court to refuse to allow Matthews's counsel to withdraw and appoint another attorney to represent him (which it was not), Matthews has failed to show any harm which resulted to him.

We affirm the judgment.


Bailey C. Moseley
Justice


Date Submitted:     October 29, 2008
Date Decided:       November 21, 2008

Do Not Publish

9